## 9232

### MACK MANUFACTURING CO. v. MASS. BONDING & INS. CO. *ET AL.*

#### (87 S. E. 439.)

##### CONTRACTS.  INDEMNITY BONDS.  GUARANTY INSURANCE.

1. CONTRACTS—CONSTRUCTION.—A stipulation in a builder's contract that the contractors shall furnish at their own cost the material necessary to do the work, raises the implied promise on their part to pay the material men.*

1a. APPEAL AND ERROR—FINALITY OF DECISION.—While an appeal from a *pro forma* order, simply overruling demurrer to the complaint on the ground that it does not state a cause of action, is legal, the bar should promote one trial of a case.

1b. CONTRACTS—CONTRACTS FOR BENEFIT OF THIRD PERSON—THIRD PERSON'S RIGHT OF ACTION.—A stranger to a contract can recover upon it only if it appears that it was made for his benefit, and that there was some obligation to him which supplies consideration.

1c. MUNICIPAL CORPORATIONS — CONTRACTOR'S BOND — ACTIONS — PLEADING.—In an action by a materialman on the bond given a city by its contractor for paving work, the affirmative of the issue whether the words of the paving contract and the bond manifested an intention to protect materialmen was on the plaintiff.

2. CONTRACTS.—Where the specifications for a public work, the proposal, the acceptance, and bond given to secure the performance of the contract are inter-dependent and refer to each other by cross references, they are synchronous and evidence a single transaction.

3. CONTRACTS—INDEMNITY BONDS.—Indemnity contracts, written for a premium by corporations engaged in such business are a modern device; and in their construction little help may be had from cases of indemnity arising out of transactions of a different character.

4. CONTRACTS.—The right of a third person, for whose benefit a contract is made, to recover thereon is not dependent upon the question whether the party making the contract, in making it acted as agent of the party to be benefited.

4a. MUNICIPAL CORPORATIONS — CONTRACTOR'S BOND — MATERIALMEN — NECESSITY FOR SEALED AUTHORITY.—Although authority of an agent to execute an instrument under seal, in the absence of the principal, must, in all instances, be itself under seal, where a paving contractor for a city executed a bond to secure such city, it being within the contemplation of the parties that the bond should also secure materialmen for the work, such bond was efficacious to give a materialman a right of action against the bonding company thereon, although the city had no sealed authority from the materialman to execute an instrument under seal, since the relationship between the material-

man and the bonding company was not dependent upon whether the city was the agent for the materialman when the bond was executed.

5. CONTRACTS—SPECIALTY—SIMPLE.—Where a seal is not necessary to the validity of a contract, it may be regarded as surplusage, and the instrument take effect as a simple contract.

5b. MUNICIPAL CORPORATIONS — OPERATION AS SIMPLE CONTRACT. — The fact that a city had no sealed authority from a materialman, who furnished material for a paving work, to execute a sealed contract for the work and the bond securing the city and materialmen from default by the contractor did not bar the materialman's action on the bond against the bonding company, since the seal to the contract and bond, not necessary to their validity, could be disregarded as surplusage, the instruments operating as simple contracts.

6. MUNICIPAL CORPORATIONS — CONTRACTOR'S BOND — NATURE OF LIABILITY—"SURETY."—Where a bonding company executed a bond to secure a city and materialmen from harm from any default of a paving contractor, although the company referred to itself as a "surety" in the bond, it was not such, and its contract to be construed, as others, fairly from the words used, its agreement being to save persons from possible harm in a transaction into which they were about to enter, while a surety's contract is to pay a person that which a third person is first liable to pay the second.

7. BONDS.—The amount of a bond to insure the performance of a contract is presumably fixed with reference to an apprehended partial failure, and the reasonably probable outcome.

7a. MUNICIPAL CORPORATIONS — INDEMNITY BOND — CONSTRUCTION. — Where a bonding company agreed to save a city harmless in the matter of a paving contract amounting to $80,000, the bond being fixed at $28,000, the discrepancy between the amount of the bond and the cost of the work was not decisive of the issue whether such bond was intended to secure materialmen.

8. BONDS—CONSTRUCTION.—The construction of a bond as embracing a particular provision does not exclude other provisions, not then under consideration.

FOOTNOTE.—Liability of surety company as distinguished from liability of individual surety, see 23 A. & E. Ann. Cas. 1912b, 1087; 57 S. C. 459, 35 S. E. 754; 33 L. R. A. (N. S.) 513. Companies guaranteeing performance of contracts as insurers, see notes in 33 L. R. A. (N. S.) 513; 47 L. R. A. (N. S.) 295. As to right of subcontractor, materialman, or laborer to maintain action on contractor's bond to owner, see notes in 27 L. R. A. (N. S.) 573, and 53 L. R. A. (N. S.) 1915a, 768. Implied power to incorporate in contract for public work, or in contractor's bond, the requirement that the contractor shall pay laborers and materialmen, see note in 46 L R. A. (N. S.) 325, and 11 L. R. A. (N. S.) 1028.

9. BONDS—CONSTRUCTION.—Where a bond, made and delivered to a city, to secure the performance of a builder's contract, stipulated that the contractors should well and truly comply with all the agreements of their contract and proposal, which expressly required them to furnish the necessary material, and impliedly bound them to pay therefor; and further stipulated that they should promptly pay all claims of all persons furnishing material, it was intended to save harmless, not only the city, but also others who might be injured by the failure of the contractors to perform their agreements, and it became the primary obligation of the bonding company to see that the materialmen were paid, as the debts due them by the contractors were contracted; and such materialmen have a right to sue and recover thereon.

Before SHIPP, J., Greenville, November, 1914. Affirmed.

Action by Mack Manufacturing Company against Massachusetts Bonding and Insurance Company, and the City of Greenville, of whom the former is appellant.

The facts are stated in the opinion.

The contract between Bowe & Page and the city of Greenville construed in this case was composed of a proposal, the contract, and specifications. The pertinent portions of said papers are as follows:

The proposal: It is dated July 23, 1910. "The undersigned as bidders, hereby agree that they will contract with the city of Greenville, S. C., to furnish all material and equipment and labor necessary for the construction and completion of the work, if awarded them by the said Paving and Sewer Commission, and will take in full payment therefor the following sums, to wit:" Here follows a schedule of the various prices at which the work is to be done. The concluding paragraph is as follows:

"And hereby agrees to enter into a contract, and to file with the city within thirty days from the acceptance of his proposal, a good and acceptable bond for at least one-third of the contract price for the faithful fulfillment of the contract. If this proposal is accepted and the under-

signed fails either to sign contract as per attached form, or to furnish bond as per attached form, to an amount equal to 33 1-3 per cent. of the gross amount of the work, in a surety company satisfactory to the city, within the time specified above, then the undersigned agrees that the enclosed certified check for $2,500 shall be forfeited to the city, and herein admits the cost of readvertising and reletting this work to be two thousand five hundred ($2,500) dollars."

The contract:

"South Carolina, Greenville County.

"This agreement, made and concluded this 9th day of August, 1910, by and between the city of Greenville, S. C., represented by its Paving and Sewer Commission, the agents of the mayor and board of aldermen, party of the first part, and Bowe & Page, party of the second part.

"Witnesseth, that the said party of the second part agrees and by these presents do agree with the said party of the first part, for the consideration named in proposal at * * * own cost and expense to do all the work, furnishing all the material equipment and labor necessary to do same, and under penalty of the bond attached, called for by this agreement, and at the price named in * * * proposal bearing date of July 23, 1910.

"And said party * * * of the second part further agree * * * to do the work in strict accordance with the plans and specifications on file, said plans and specifications, in addition to the proposal mentioned, being hereto annexed and made a part of this contract.

"And said party * * * of the second part further agree * * * to do any extra work necessary for the proper completion of the work in the manner set out in the specifications.

"It is mutually agreed that payments will be made by the party of the first part as set out in the specifications.

"In witness whereof, the parties of this agreement have hereunto set their hands and seals in duplicate at Greenville, S. C., on the day and date hereinbefore written.   City of Greenville, by W. E. Beattie (L. S.), W. C. Gibson (L. S.), J. B. Marshall (L. S.), Bowe & Page, Contractors."

The bond sued on is as follows:

State of South Carolina, County of Greenville.

Know all men by these present, that we, Wm. F. Bowe and T. C. Page, contractors and partners, doing business under the firm name of Bowe & Page, as principals, and Massachusetts Bonding and Insurance Company, a corporation of the Commonwealth of Massachusetts, as surety, are held and firmly bound unto the city of Greenville, South Carolina, in the full and just sum of twenty-eight thousand ($28,000) dollars, for the payment of which we bind ourselves, our heirs, executors, successors and assigns, firmly, jointly and severally, by these presents.

Sealed with our seals and dated this the 19th day of September, A. D. 1910.

The condition of the above obligation is such, that, whereas, the above named principals have entered into a contract, which includes the proposal and specifications, all of which are hereto annexed and made a part hereof, which are identified by the signatures of the principals herein, whereby the said contractors have assumed certain obligations to the city with respect to the construction of certain pavements in the city of Greenville, South Carolina, which are fully specified in the said proposal, specifications and contract, reference to which is hereby craved.

Now, therefore, should the contractors well and truly comply with all the agreements of their contract and proposal, signed by them and dated August 9, 1910, the said proposal and specifications thereto attached and being a part of the same, and shall fully and promptly pay the wages of all laborers, workmen and mechanics employed by them or

their subcontractors on said work, and shall fully and promptly pay all claims of all persons who furnish material and supplies used in the construction of said works, and shall deliver same to the city of Greenville free from all claims aforesaid, and free from the claims of adjoining or neighboring proprietors for damages or trespass, and free from all claims for damages of whatsoever nature done by said Bowe & Page, their officers, agents and employees, then this obligation to be null and void; otherwise, to remain in full force and effect.    Bowe & Page (Seal) ; Wm. F. Bowe (Seal) ; T. C. Page (Seal), Contractors; Massachusetts Bonding & Insurance Co. (Corporate Seal), by Eugene Dodd, Attorney in fact; Attest: Fair Dodd, Attorney in fact, Surety.

The following sections of the general specifications bear upon the present issue:

"Section 16. Responsibility. The contractor shall be responsible for all material and work until they are finally accepted by the city, and shall repair, at his own expense, any damages they sustain before their final acceptance. The contractor shall be responsible for all damages caused by him of whatever nature, and must settle all claims from such damage without cost to the city; he shall act as defendant in, and bear the expense of, each and every suit of any and every nature which may be brought against him or the city by reason of or connected with the work done under his contract.    Should any claims arise, the city can hold back sufficient money to meet said claims, or until the contractor has satisfied the city that all claims against him as the result of his work have been adjusted.    He must also show that there are no claims or liens whatsoever outstanding at the completion of his contract before final payment is made."

"Section 21. Payments. All work will be paid for in cash, upon the estimate of the engineer, which shall be made at the end of each month; this estimate will include the work

completed during the month, and the contractor will be paid within the first ten days of the succeeding month 80 per cent. of the work completed as shown by said estimate, the remaining 20 per cent. will be retained until the completion and acceptance of the work. At the completion of the contract the city will have a final estimate made, and will cause to be paid to the contractor, within 30 days after such final estimate is made, the entire sum found to be due under the contract after deducting therefrom all previous payments and such other sums as may be authorized under this contract."

"Section 22. Bond. The contractor must furnish a surety bond in some acceptable company for an amount equal to one-third of the amount of the entire contract, made to the city, for the faithful performance of his contract, said bond to be signed by him as principal and by said surety company."

From the order overruling the demurrer to the complaint, the defendant, Massachusetts Bonding and Insurance Company, appealed upon the following exceptions:

1. Error of the presiding Julge in overruling the defendant's first ground of demurrer, which was as follows:

"The bond and contract, the basis of the action, do not declare the plaintiff and those in its class for whose benefit the action is brought, as beneficiaries thereof; they are not named as such; they have and have had no interest therein; there is no privity of contract between them and the defendant; the bond was given solely for the purpose of protecting the city of Greenville, from damage or loss by reason of the contractor's default; it was not given for the benefit of the plaintiff and others of his class."

2. Error of the presiding Judge in overruling the defendant's second ground of demurrer, which was as follows:

"The bond is a sealed instrument; the plaintiff is not named as an obligee therein; the defendant's promise was

not made to it; there is no privity of contract between the plaintiff and this defendant."

3. Error of the presiding Judge in overruling the defendant's third ground of demurrer, which was as follows:

"The obligations of the defendant and Bowe & Page in said bond to the city of Greenville, were not intended by the parties to enure to the benefit of the plaintiff or to give the plaintiff any right of action against this defendant; whatever benefits in favor of the plaintiff are embodied in said bond are merely incidental, flowing from the defendant's obligations to the city of Greenville to indemnify it from loss or damage on account of the defaults of Bowe & Page."

4. Error of the presiding Judge in overruling the defendant's fourth ground of demurrer, which was as follows:

"No consideration in the execution of said bond moved from the plaintiff to this defendant for the alleged promises to pay its claims; the plaintiff had no knowledge of such bond or promise, either at the time of its execution or when it delivered the goods sued for; the plaintiff in selling said goods did not act upon the faith of the alleged promise. Those facts should appear in the complaint; they do not."

5. Error of the presiding Judge in overruling the defendant's fifth ground of demurrer, which was as follows:

"It does not appear that the city of Greenville was under any obligation, legal or equitable, to make promises for the payment of the claims of materialmen; and it does not appear that the obligee of the bond was attempting to do anything else than to protect itself."

6. Error of the presiding Judge in overruling the defendant's sixth ground of demurrer, which was as follows:

"There is nothing in the contract which the bond was given to secure calling for the payment by Bowe & Page of the claims of materialmen."

7. Error of the presiding Judge in overruling the defendant's seventh ground of demurrer, which was as follows:

"The rule of law is this: It is not every promise made by one to another, from the performance of which a benefit may ensue to a third, which gives a right of action to such third person; he being neither privy to the contract nor to the consideration. The contract must be made for his benefit, as its object, and he must be the party intended to be benefited."

*Messrs. Dodd & Dodd* and *Frank G. Tompkins,* for appellant, cite: *As to right of third party to sue on contract:* 1 Rich. 268; 3 Strob. 196; 94 S. C. 125; 31 S. C. 87; 82 S. C. 284; 89 S. C. 11. *Construction of this bond:* 97 S. C. 291. *Contracts under seal:* 93 U. S. 143; 1 Parsons Contracts, sec. 467; 9 Rich. 258; 31 S. C. 89; 21 L. R. A. (N. S.) 1051.

*Messrs. Cothran, Dean & Cothran,* also for appellant, submit: *A stranger to a contract between two other persons cannot recover upon it, unless it appears, not only that it confers a benefit upon him, but that it was made for his benefit:* 9 Cyc. 380; 72 Fed. 758; 57 Atl. 448; 156 S. W. 745; 198 Fed. 749; 37 Pac. 712; 18 Fed. 522; 154 U. S. 73; 2 Bail. 55; Dud. L. 332; 1 Rich. 268; 3 Strob. 196; 31 S. C. 87; 62 S. C. 222; 82 S. C. 284; 89 S. C. 11; 94 S. C. 125; 73 Cal. 522; 36 Kan. 246; 59 Am. Rep. 541; 119 Mo. 304; 41 Am. St. Rep. 654; 47 N. Y. 233; 7 Am. Rep. 440; 68 N. Y. 355; 26 Or. 186; 71 Am. St. 169, 189, 192. *A stranger to a contract between two other persons cannot recover upon it, unless it appears, not only that it was made for his benefit, but also that there was some obligation or duty from the promisee to him, which supplies the consideration of the contract:* 98 U. S. 123; 1 Gray 317; 37 Am. R. 185; 31 A. D. 458; 59 A. R. 541; 15 L. R. A. 375; 53 L. R. A. (N. S.) 768; 40 Am. Rep. 485; 69 N. Y. 284; 25 Am. R. 195; 27 L. R. A. (N. S.) 595; 25 L. R. A. 257, 259; 93 U. S. 143; 131 N. W. 334; 116 N. W. 928; 43 Pac. 661;

101 S. W. 6; 87 Atl. 520; 55 N. W. 604, 606; 37 Pac. 712; 142 N. W. 873; 117 S. W. 611; 154 U. S. 73; 116 N. W. 925; 43 Pac. 659; 50 Pac. 623; 88 Pac. 687. *The entire transaction shows that the bond was taken for the benefit of the city and not primarily or directly for the benefit of materialmen; that, if any benefit at all thereunder accrued to the plaintiff, it was incidental only:* 82 S. C. 284; 37 Pac. 712; 55 N. Y. 270; 68 N. Y. 355; 35 N. Y. Supp. 453; 156 N. Y. 702; 6 R. C. L. 887; 133 U. S. 610, 620, 622; 98 U. S. 123; 133 U. S. 621; 53 L. R. A. 609; 109 U. S. 194; 23 Fla. 160; 71 Am. St. 192; 53 Atl. 509; 47 N. W. 1067. *The implied obligation of Bowe & Page to pay for material they agreed to furnish is an obligation to materialmen, and cannot be considered an obligation to the city, so as to constitute the materialmen beneficiaries of the surety's undertaking:* 5 Dillon, Mun. Corp. (5th ed.), sec. 830, p. 1264; 85 N. W. 648; 45 N. E. 218; 80 N. E. 98; 1 N. W. 519; 97 N. W. 72; 40 Pac. 608; 8 Tex. Civ. App. 669. *In the absence of an express provision in favor of materialmen, the clause in the defeasance part of the bond is simply in exoneration of the obligors and cannot constitute a contract in favor of the materialmen so as to give them a right to sue upon the bond:* 37 Pac. 712; 41 N. Y. 201; 55 N. Y. 270; 68 N. Y. 355. *The liability of the bonding company was as surety:* 37 Atl. 397; 63 Atl. 517; 22 Cyc. 80; 20 Cyc. 1400, 1402; 186 U. S. 309; 63 Fed. 48; 92 Fed. 549; 191 U. S. 416; 200 U. S. 197; 215 U. S. 533; 231 U. S. 237; 37 Am. Rep. 162; 25 Ind. 453; 2 L'd Raymond 1085; 1 McC. 395; 1 Bailey 418; 9 L. R. A. (N. S.) 557. *Provision to pay "promptly:"* 191 U. S. 425.

*Messrs. Haynsworth & Haynsworth* and *William G. Sirrine,* for respondent, submit: *Privity of contract not necessary to enable plaintiff to recover:* Dudley L. 332; 25 L. R. A. 257, 265-266; 1 Rich. L. 268; 3 Strob. L. 196; 82 S. C. 284, 294. *It was the duty of the city to protect laborers and*

*materialmen:* Dillon, Mun. Corp. (5th ed.) 830; 42 S. E. 858, 860. *The terms of the proposal, contract, specifications and bond show the purpose to protect the claims of laborers and materialmen. One of the conditions named in the bond is to pay creditors of this class, who are, therefore, entitled to sue thereon:* 123 N. W. 536; 120 N. W. 787; Elliott, Contracts, sec. 3804; 115 N. W. 811; 57 N. W. 531; 65 N. W. 796; 46 S. W. 625; 84 N. E. 555; 57 P. 237; 21 N. W. 83; 139 S. W. 975; 68 P. 92; 72 N. W. 565; 45 A. 1056.

November 15, 1915.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

We repeat here what was said in *McLendon* v. *Columbia,* 101 S. C. 52, 85 S. E. 234, with reference to the practice of appealing immediately from an order like that in

1a.    the instant case. It is true, the legality of the practice has been sustained, but the bar ought to promote one trial of a case.

The sole issue made by the appeal is the construction of a paving contract between the city of Greenville and Bowe & Page, together with the construction of a bond contract about the same subject between the city of Greenville and the Massachusetts Bonding and Insurance Company.

History: The city of Greenville made a written contract with Bowe & Page to pave the city's streets; Bowe & Page were to furnish all labor and material thereabout; the city was to pay Bowe & Page a specified sum, in monthly installments; the contract provided that Bowe & Page should execute a bond for $28,000 "for the faithful performance of the contract;" the bond was made; the plaintiffs sold Bowe & Page one and a quarter million of brick used in the paving, worth some $40,000; the plaintiffs have received as payment on the brick $27,000, and are yet due to be paid some $13,000; Bowe & Page are due to plaintiffs and other credit-

ors in like plight some $20,000; the work of paving is completed and the city has accounted to Bowe & Page and their assigns for all moneys due under the contract; the city has no further interest in the contract, and is only made a party to the action because the bond runs to it; the action is brought for all creditors of Bowe & Page, who have suffered like the plaintiffs.; the action is in effect on the contract between the city and Bowe & Page, and on the bond contract between the city and the Massachusetts Bonding and Insurance Company.

The Massachusetts Bonding and Insurance Company demurred upon the ground the complaint does not state facts to make a cause of action; and it specifies seven reasons why it should be sustained. The Circuit Court, in a *pro forma* order, simply overruled the demurrer and the Massachusetts Bonding ·and Insurance Company has appealed from the order.

There are seven exceptions, all in the language of the specifications.

The appellant's brief, however, presents but three subjects, and all these need not be discussed, for the first and second postulates are manifestly true.

The three subjects are:

(1) A stranger to a contract between two other persons cannot recover upon it, unless it appears, not only
1*b*.    that it confers a benefit upon him, but that it was made for his benefit.

(2) A stranger to a contract between two other persons cannot recover upon it, unless it appears, not only that it was made for his benefit, but also that there was some obligation or duty from the promisees to him, which supplies the consideration of the contract.

(3) The entire transaction shows that the bond was taken for the benefit of the city and not primarily or directly for the benefit of materialmen; that, if any benefit at all thereunder accrued to the plaintiff, it was incidental only.

The real and only controversy is about that last stated. So the issue is this: Do the words of the paving contract and the bond contract manifest an intent to protect those parties who sold material to Bowe & Page? The affirmative of that issue is on the respondent.

We think the respondent has met the issue, and we are, therefore, of the opinion that the demurrer ought to have been overruled.

The Reporter will include those words of (1) the proposal; (2) of the acceptance or contract; (3) of the specifications, and (4) of the bond, all which appear in the "case."

1. Those are the words which manifest the intent of the parties, and which bind the surety company, if it be bound.

The four papers, the proposal, the acceptance or contract, the specification and the bond are interdependent. The "proposal" makes express reference to the contract and to the bond, and it declares that the form of the bond is attached to the proposal.

The acceptance or contract refers expressly to the bond, and declares that it is attached to the contract; and the contract expressly refers also to the specifications, and to the proposal, both of which it declares are annexed to the contract as a part of it.

The specifications refer expressly to the obligations of the contract, and to a bond to be made for the faithful performance of the contract.

One of the express terms of the contract is, that Bowe & Page shall furnish, at their own cost, all the material necessary to do the work. And this carried the implied promise that material shall be paid for by Bowe & Page.

The bond refers to the contract, to the proposal and to the specifications, all identified by the signatures of the principals, and all expressly made a part of the bond.

It recites that Bowe & Page had assumed certain obligations to the city with respect to the construction of pavements.

One of their express obligations, as before stated, was to furnish, at their own expense, all the material necessary to do the work. And that carried, as before stated, the implied promise by Bowe & Page to pay the materialmen.

The effect of such cross-reference by each paper to the others, both expressly and impliedly makes them synchronous and constitutes them one transaction. There is, therefore, no room to conclude that the terms of the bond are broader than the parties intended it to be, or broader than the transaction it was executed to indemnify made it necessary to be.

Indemnity bonds, written for a premium by corporations engaged in that business, are of somewhat modern device. And in the construction of them, not much help may be had from cases of indemnity arising out of transactions of another character.

We shall defer to the last a consideration of the real question in the case, and that is what did the parties intend by the words of the contract, or more exactly, did they have in mind the plaintiff.

There are some minor issues made by the arguments about particular features of the contract, and these we shall first consider.

2. It is argued under the second ground of demurrer, that the sealed contract and the sealed bond are invalid to bind the defendant, because when the city made them it did so as the agent of the plaintiff, if the plaintiff was at all considered, and such agency was not constituted by a sealed instrument.

The second ground of demurrer is hardly suggestive of that issue, but if it is, the argument is not sound.

It is true that "authority to an agent to execute an instrument under seal, in the absence of the principal, must in all instances be itself under seal."

But the relationship of contract which exists betwixt the plaintiff and the bonding company, if any, is not dependent upon whether the city was agent for the plaintiff when the contract was made.

If, however, that be so, yet the seal to the contract and bond, which are in no manner necessary to their validity, may be regarded as surplusage, and the instruments will take effect as simple contracts.

3. In one of the appellant's arguments it is said : "It must be kept in mind that this suit is one in which it is sought to subject the *surety* to liability, and the general doctrine of suretyship, namely, that a surety liability cannot be extended by implication, must also be kept in mind."

The liability of the bonding company, is not that of a surety, though the bonding company refers to itself as "surety" in the bond.   Its contract is to save persons from possible harm in a transaction into which those persons are about to enter.   A surety's contract is to pay a person that which a third person is first liable to pay to the second.   22 Cyc. 80.

The issue in the case at bar is what has the bonding company agreed to do; and like any other contract that must be judged of by a fair consideration of the words the parties have used.

4. It was argued at the bar, and in one of the printed briefs, that the amount of the bond as compared with the total cost of the work undertaken, is a circumstance to show the bond had no relevancy to the entire cost of the work.

It is a matter of common knowledge that if a city shall contract with a person to do a piece of work for $80,000, it is not reasonably probable that in the performance of the contract the city will lose all of $80,000.   The utmost that

could be reasonably apprehended is, that there should be a partial loss; and bonds are made in the light of that experience, and the amount of the bond is fixed with reference to that reasonable outcome.    In the case at bar the work was to cost $80,000 and the bond was fixed at $28,000.    From that it may not be reasonably concluded that the parties to the contract did not have in mind any possible failure to pay for *part* of the material to be used in the work.

5. One of the arguments made reference to the case of *Bank* v. *Greenville*, 97 S. C. 291, 81 S. E. 634.    The suggestion is that the bond in issue was therein construed to be only an undertaking to assure to the city that the pavement would remain in tact for five years after its completion.

The full meaning of the bond was not up for consideration in that case.

It was there only held, that the city might not keep back a part of the price of the work to make good any repair that might be found necessary in five years, because the city had a bond to that end.

6. The real question in the case is that we shall now consider, and that made by the third head discussed by appellant, and before quoted.

It is conceded by appellant that if the bond was taken for the benefit of the plaintiff, not incidentally but really, then the plaintiff has the right to sue and to recover upon it.

That must be judged of by the words of the entire agreement,—proposal, contract, specifications and bond, before adverted to.    And as before stated, the proposal and the contract recite that the bond was attached to them when they were signed.    It is true the appellant says, "the exact bond attached to the pamphlet was not used."    The "case," however, does not show that, but the contrary.

The bond, therefore, is the instrument which must decide the rights and obligations of the parties, for it was written into the proposal and into the contract and they into it.

The bond was the last and completed and inclusive expression of that which the parties intended.

There are three parties to the bond contract, Bowe & Page and the bonding company, the promisers, and the city, the promisee, though the city did not sign. Thereby it was in effect stipulated that Bowe & Page should "well and truly comply with all the agreements of their contract and proposal."

Referring back to such proposal, Bowe & Page therein agreed with the city to furnish all material and equipment * * * necessary for the * * * work;" and by the contract, at their "own cost and expense to do all the work, furnishing all material equipment and labor necessary."

The contractors, Bowe & Page, therefore (1) were expressly bound to furnish the material at their own expense; and (2) were impliedly bound to pay to those who supplied them with material the price of it.

The bond recites that if the contractors do that and more, *"and* shall fully and promptly pay all claims of all persons who furnish material and supplies used in the construction of said works," then the bond should be void, otherwise of full force.

The word "promptly" is significant; it was specified that materialmen should not only be paid, but paid *"promptly,"* that is, as the work progressed from day to day. It was manifestly the primary business of the bond company to see that the pay rolls were met and the materialmen were paid, as the debts for them were contracted, else the public work could not progress. Indeed, the appellant suggests that "there was no occasion, reason or inducement for the *city* to insist upon a provision for the payment of the claims of materialmen; its contract was with Bowe & Page, and it was a matter of legal indifference to the city where, from whom

and how Bowe & Page secured the material for their work; or whether, having secured it, they paid for it or not; the materialmen could not impose a lien upon the surety of the city."

It cannot be that a municipality about to engage in a great public work, with full knowledge that those who furnished labor and material therefor could not claim a lien for them on the streets, and so solicitous that the work should be faithfully done that a bond was exacted, was "indifferent" as to whether laborers or materialmen were paid.

And if they were indifferent, that state of mind arose only out of satisfaction in contemplation of the fact that they had provided a way of escape for laborers and materialmen, to wit, the bond of an insurance company. But that was not indifference.

Nor is there any force in appellant's suggestion that the entire agreement raised no promise by Bowe & Page to pay for labor and material. As before stated, they bound themselves by the contract to supply all labor and material at their own cost; and there followed, of course, the legal obligation to pay for these necessities.

The agreement by the bond company that Bowe & Page "shall deliver *same* to the city of Greenville free from all claims aforesaid" does not at all modify or conflict with the words next before those which bind the insurance company to see that materialmen are promptly paid.

If "same" refers to streets, the quoted words are in harmony with those preceding it; so that if the streets have been delivered to the city with claims (not liens) for unpaid material outstanding, then the bond has been violated. The city was rightly mindful that all such claims should be paid, and it provided by the bond that they should be paid.

Nor can these words of obligation to "pay all claims of all persons who furnish material and supplies used in the construction of said works," be "rejected as inconsistent with the plain and declared intention of the parties."

So much is suggested by the appellant, in view of the gravity to the bond company of the issue which the words make. As well might all the defeasance clause of the bond be rejected after the first clause of it.

There is no warrant for appellant's statement that "the apparent construction of the bond given by all the parties concerned indicate that there was *no thought* upon the part of any one that the materialmen were directly or even incidentally affected by it."

The four paper writings do not show that, and there is no testimony which shows it; that is the question now at issue, and the quoted argument merely assumes the question.

Finally, the brunt of the demurrer is that the intent of the parties was to save the city harmless. That is part of the truth, but not all. The intent of the parties is inferable from the words they have used, and from them it was to save the city, and to save others as well.

Nowhere has it been expressly written in the agreements that the intent was to save the city.

The bond was agreed to be given (in the proposal) for "the faithful fulfillment of the contract." A faithful fulfillment of the contract required that the contractors, Bowe & Page, should furnish at their own expense the material, and by necessary implication, that they should honestly do so by paying for it.

One of the counsel suggests that the parties contemplated that "it is always possible for any person to sue, even though he cannot maintain successfully his suit;" and the inference was drawn that the bond was, therefore, exacted to protect the city in the event materialmen should sue it for goods sold to Bowe & Page. We think the bond does not nearly so plainly show that as it shows for the plaintiff's view.

If the plaintiff had sued the city for the price of the brick and recovered, it may be that the bond could have protected

the city. But in such a case there could confessedly be no such recovery, and, therefore, no office for the bond.

It is true that had Bowe & Page failed, as they did; and had the city been obliged to complete the contract at a price greater than that agreed upon by Bowe & Page, as they were not; then the bond would have protected the city.

The words of the agreements, however, do not show that the parties intended that to be the only office of the bond, but more. It cannot be doubted, that if Bowe & Page, while the work was in progress, had refused to pay for material, and that fact had been reported to the bond company by the city, that it would have been the duty of the bond company to have intervened.

We think, therefore, that the parties expressly agreed, and intended to agree, and so wrote it: (1) That Bowe & Page should furnish and promptly pay for the brick; (2) that the bond company should see to that; (3) that the bond company should also see that the laborers were promptly paid; (4) that the contractors, Bowe & Page, should deliver the streets to the city free from any such claims, and (5) and free from claims of other specified sorts.

Mr. Dillon has suggested the reason and practice of this procedure in his great and standard work on Municipal Corporations; and into that we need not go further. Dillon, section 830, *et seq.* The cases upon the subject are divergent. 6 R. C. L., page 888. It would not be profitable to discuss them.

We are, therefore, of the opinion that the order of the Circuit Court must be affirmed; it is so directed.