GREENVILLE v. ORMAND.

SURETY—BUILDER'S CONTRACT.—The surety on a builder's contract is discharged by the payment to the principal in full of the amount due on the monthly estimates, where the contract provides that ten per cent. shall be reserved until the final completion of the contract.

Before GARY, J., York, July, 1896.   Reversed.

Action by the City Council of Greenville against G. C.

Ormand, surviving partner of Ormand & Goforth, Thos. F. Dunlap, administrator of R. J. Dunlap, J. R. Williams, L. K. Armstrong, and John Nichols, to recover an amount advanced to Ormand, survivor, under contract for completion of sewerage system in city of Greenville. Judgment for plaintiff. Defendant sureties appeal.

*Messrs. Hart & Hart, Finley & Brice*, and *C. E. Spencer*, for appellants, cite: 32 S. C., 288; 9 Wheat., 702; 23 S. C., 590; 6 C. B. (N. S.), 550; 2 Keene, 638; 37 Mo., 466; 36 Minn., 439; 1 Stark., 192; 77 Ga., 40; 5 Md., 602; 39 Kan., 381; 17 S. C., 4; 32 S. C., 241; 9 Ind., 241; 49 Mich., 157; 92 U. S., 98; 3 Strob. Eq., 64.

*Messrs. Jos. A. McCullough* and *Wilson & Wilson*, contra. The former cites: 5 C. C. A., 505; 33 S. C., 562; 2 La., 792; 26 N. E., 175; 33 N. Y. S., 265; 63 N. W., 635.

Nov. 10, 1897. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is a case involving the right of sureties. On the 19th day of March, 1892, G. C. Ormand and W. L. Goforth entered into a contract with the city of Greenville to perform certain work for said city, in digging trenches for sewerage, and on same day Ormand & Goforth, with appellants as sureties, entered into a bond for faithful performance. Among other things, it was stipulated in the contract that "payments for the work shall be made monthly upon the estimate of the city engineer. Ten per cent. of the amount due shall be retained until the satisfactory completion of this contract." In the specifications made a part of the contract, it was provided that "the engineer, on the last day of each month, will estimate the amount of work completed, according to these specifications, and ninety per cent. of the amount due will be paid the contractor on or before the 5th day of the following month." Before the completion of the work, Goforth died, and, on the 12th day of August, 1892, the surviving member of the firm, Ormand, entered into another agreement with the city of Greenville,

changing, in some respect, the original contract.   In this last agreement, which also provided for an increase of the price to be paid for certain work, it was stipulated "that the said city of Greenville, through its city council, shall and will, upon the recommendation of the city engineer and sewer committee, lend to him, the said G. C. Ormand, its credit in the purchase of dynamite and tools to be used in the prosecution of said work; or, at the option of said city council, shall purchase the same outright, deducting the price thereof from the payments to be made to the said G. C. Ormand under said contract, and these presents, including the ten per cent. reserved by the city under the said contract.   And in case, at any time, there should be due the said city any sum or sums by reason of said advances, or the use of its credit, as aforesaid, then the said G. C. Ormand hereby binds himself to repay the same; and in case the credit of said city is used as aforesaid, the said G. C. Ormand hereby agrees to save harmless the said city, by reason thereof, and the bond given by G. C. Ormand and W. L. Goforth, his deceased partner, for the faithful performance of this contract, shall be liable therefor.   The said city of Greenville, by its city council, hereby accepts and agrees to said contract as thus modified in all its parts, and promises faithfully to carry out the same."   On the 30th day of August, 1892, the sureties, in writing, under seal, consented to the change in the original contract, and agreed that said bond should also cover "any amount that Ormand or Goforth, or G. C. Ormand, surviving partner, may be due the city of Greenville upon final settlement with the same, for money advanced in the purchase of tools and dynamite, used, or to be used, in the work named in the original contract, &c."   The final estimate showed that the amount of work done by the contractors was $33,948.94, of which $15,000 of work was done before the amended contract, and $18,948.94 after.   The amount paid out by the city of Greenville for tools and dynamite was $2,158.02, and this suit is to recover this sum.   The city of Greenville paid the

contractors the full amount of the estimate without regard
to the ten per cent. reserve, without deducting the amount
due for tools and dynamite, and this was done without the
consent of the sureties.

The sole question presented here is whether, under these
circumstances, the sureties ought to be discharged. We
think the sureties are discharged.

1. The disregard by the city of the provision for the res-
ervation of ten per cent. of the amount due on the engineer's
estimate was a material variation of or departure from the
contract. The surety is bound, and only bound, "to the
extent and in the manner and under the circumstances
pointed out in his obligation," as stated by Mr. Justice
Story, in *Miller* v. *Stewart*, 9 Wheat., 703. This principle
is recognized by all the authorities. Nor is it essential that
the alteration of the contract should be injurious to the
surety. The surety is bound by the contract which he
makes, not by some contract which he did not make, even
though the latter may be more favorable than the former.
*Jackson* v. *Patrick*, 10 S. C., 197; *Gardner* v. *Gardner*, 23
S. C., 592. The contract made by the sureties expressly
provided for the ten per cent. reserve. It is a mistake to
suppose that this provision was inserted for the benefit of
the city of Greenville alone, and that the city might waive
it. It was designed to secure the satisfactory completion
of the work according to the specifications of the contract,
for which the sureties were liable, and was for their benefit
as well as for the benefit of the city. The principals dealt
with each other as if there was nothing whatever in the
agreement in reference to the ten per cent. reserve, in effect
striking that provision from the contract. This the prin-
cipals could do so far as they were concerned, but not so
far as the sureties are concerned. The good motive which
actuated the city council in disregarding this provision, viz:
to enable the contractor to continue the work, cannot help
the city in this contention, since it failed to do what was
essential to bind the sureties, procure their consent. It

may be that the payment to the contractor in full, without regard to the stipulated reserve, kept the work going on to completion, and in this way was beneficial to the sureties, but, as shown above, the surety's liability on a contract, materially altered by the principals, is not to be determined by ascertaining whether he was injured or benefited by the alteration, but by the fact of alteration.

It is quite easy to understand why the sureties in this case might not have signed the contract, except for the provision as to the ten per cent. reserve. If, by reason of the death or insolvency of the contractor, the work should stop, and it should become the duty of the sureties to carry on the work, or indemnify the city for damages, the reserve might protect the sureties against final loss. Such reserve, too, would be very potent in holding the contractor to his contract. In vol. 24, Enc. Law, p. 837, under the statement of the general principle that "any material alteration in the terms of the contract of a suretyship will release the surety if he has not consented to the change," the following is stated in the note giving examples: "A surety on a building contract, where the principal is to be paid by instalments, is discharged if the principal is paid faster than the contract provides. Citing *General Steam Nav. Co.* v. *Rolt*, 6 C. B. (N. S.), 550; 95 E. C. L., 550; *Calvert* v. *London Dock Co.*, 2 Keen, 638." In DeColyar on Guar., &c., 390, these cases are referred to as good instances where a surety was discharged by a material variation of the terms between the creditor and the principal. In the first case, it is stated that "A contracted with B to build for A a ship for a given sum, to be paid by instalments as the work reached certain stages; and C became surety for the due performance of the contract on the part of B, the builder. A allowed B to anticipate the greater portion of the last two instalments. It was held that C (the surety) was discharged, as A, by allowing B to anticipate the instalments, had materially altered the terms of the contract with B, the principal." In the other case, "a contractor undertook to

perform certain work upon the terms that three-fourths of the work as finished should be paid for every three months, and the remaining one-fourth on the completion of the whole work. Payments *exceeding* three-fourths of the price of the work done having, without consent of the sureties for the due performance of the work, been made to the contractor before the completion of the contract, it was held that such sureties were discharged." In Brandt on Sur. and Guar., p. 579, the same doctrine is announced, citing the same cases, and also *Bragg* v. *Shain*, 49 Cal., 131.

The necessity of a strict compliance with the mode of payments, specified in the contract, in order to bind a guarantor, is shown in *Edmondston* v. *Drake & Mitchell*, 5 Pet., 624, wherein it was held to be a material alteration of the contract of suretyship for the principals to change the mode of payment to bills on London, when the contract provided for payment in bills on New York. See, also, the following cases: *Bacon* v. *Chesney*, 1 Stark, 192; *Warden* v. *Ryan*, 37 Mo. App., 466; *Simonson* v. *Grant*, 36 Minn., 439; *Marchman* v. *Robertson*, 77 Ga., 40, cited in appellant's brief. In the case of *Mayhew* v. *Boyd*, 5 Md., 102, 59 Am. Dec., 101, it was held a material variation of the contract so as to discharge the surety, for the creditor and principal to sell the property mortgaged to secure the debt, before the maturity of the debt, without the surety's consent. In this last mentioned case the true rule is thus clearly stated: "Any dealings with the principal debtor by the creditor, which amounts to a departure from the contract, by which a surety is to be bound, and which by possibility might materially vary or enlarge the latter's liability, without his assent, operates as a discharge of the surety."

2. The right of the sureties to be discharged in this case may be considered from a somewhat different point of view. The payment by the city of Greenville to the contractor of the whole amount due under the engineer's estimate, including the ten per cent. reserve, without deducting the amount due the city for tools and dynamite, which, under

the contract, the city had the right to do, was the giving up of a security for the debt sued on, upon which the surety had the right to rely. The contract in this case expressly gave the city the right to deduct the amount due for tools and dynamite from the amount payable to the contractor under the contract, *"including the ten per cent. reserve, &c."* This provision in the amended contract did not exempt the city from the duty of reserving the ten per cent. until the completion of the contract, except in so far as it gave the city the right to use the reserve fund to pay the claim sued on. The reserve fund, $3,394.89, was more than sufficient to pay the claim sued on. The reserve fund, even after the amended contract, amounted to $1,894.89, sufficient to pay all the claim sued on except $263.13. If there had been evidence that the sureties knew of and consented to the failure to reserve the ten per cent. previous to the amended contract, there would be reason for holding the sureties discharged only to the extent of the reserve fund *after* the amended contract, but there was no evidence on the subject, so far as the record shows, except what is contained in the amended contract, which not only does not show any consent of the sureties to dispense with the reserve fund provision, but expressly recognizes that provision of the original contract, and frees the reserve fund only to the extent of applying it to the claim for tools and dynamite. The whole reserve fund was a security for the payment of the debt for which the sureties are now sought to be made liable. As to this fund the city of Greenville became a trustee, and was bound to apply it towards the payment of the claim sued on. It cannot be doubted that if the city had kept the reserve fund intact, according to the contract, the sureties, on paying the claim for tools and dynamite, would be entitled to be reimbursed out of the reserve fund, on the satisfactory completion of the contract. By abandoning, or yielding up this fund to the contractor, the city has deprived the sureties of their right to be subrogated to this fund. This case, in principle, is like the case of

*Rosborough* v. *McAlilly*, 10 S. C., 244, wherein a surety was held discharged because the creditor, having in hand funds of the debtor sufficient to pay the debt, which he had the right to have applied to the debt, as the sealed note of an insolvent debtor, instead of so applying it in case of the surety, applied it to simple contract debts of the debtor. The Court said: "The sureties being entitled to be subrogated to all the rights which the creditor had to secure the payment of the debt, it necessarily follows that the act of the creditor in misapplying the assets was an act prejudicial to the legal rights of the sureties, and that they are thereby discharged." In *Law* v. *East India Co.*, 4 Ves., 824, the creditor paid to the personal representative of the principal a balance thought to be due on the settlement of his accounts with the company, after which the company made a claim against Law, as surety on the official bond of the principal, and it was held that payment to the personal representative was an injury to the surety, and the surety was thereby discharged. In *McDowell* v. *Bank*, 1 Harr. (Del.), 369, the Court held the surety discharged because the creditor bank permitted the principal, after the maturity of the debt, to draw out moneys of the principal, on *general* deposit, sufficient to pay the debt. This was upon the principle that the bank had a lien for the debt due on the general deposit of the principal debtor, and could not part with this security without the consent of the surety. In the case of *Baubien* v. *Stoney*, Speer's Eq., 508, the surety lost, because he failed to show any connection between the contract of suretyship and the money paid over or security paid from. The Court said: "The surety, in order to claim a discharge, must have connection or privity with the money paid over or security paid from;" and again, "If the plaintiff had guaranteed the building contract, and the defendant, after parting from the money, had sued him on his guarantee for the default of Zealy, he might have been prejudiced." This last mentioned case is pertinent as showing that the surety lost because of the failure to show the facts

established in this case, the sureties' connection or privity with the fund paid out.

It is argued that in this case the sureties are liable under the amended contract, and that the amended contract is entirely separate and independent from the contract containing the ten per cent. clause. But it is manifest, from what has been already said, that we think the amended contract is not distinct from and independent of the contract providing for the ten per cent. reserve.

The judgment of the Circuit Court is reversed as to the appellants, and the complaint as to them is dismissed.

MR. JUSTICE GARY. The act of the plaintiff in paying to the contractors all the money due for the work without deducting the ten per cent., was violative of the express terms of the contract, not *passive* but *positive* in character, and injurious to the rights of the sureties; hence they were discharged. *Lang* v. *Brevard*, 3 Strob. Eq., 59.

I, therefore, concur in the opinion of Mr. Justice Jones.

MR. JUSTIC POPE *dissents.*