### 10388

## MACK MANUFACTURING COMPANY v. MASSACHUSETTS BONDING AND INSURANCE COMPANY *ET AL.*

(103 S. E. 499.)

1. PRINCIPAL AND SURETY—BONDING COMPANY NOT PREJUDICED BY PAVING CONTRACT BETWEEN CITY AND TRACTION COMPANY.—Iu a materialman's action on a bond to recover the price of brick supplied a contractor for street pavement, where it appeared that the city and a traction company made an agreement, whereby the contractor should also pave the trackway, to which the bonding company was *held* to have assented by executing a bond to save the traction company harmless, the latter could not, in a suit upon the street paving bond, claim that it was prejudiced by such subsequent contract with the traction company, so as to release it from liability under the bond.

2. PRINCIPAL AND SURETY—CHANGING METHOD OF PAYMENT OF MATERIALMAN HELD NOT TO PREJUDICE BONDING COMPANY.—In a materialman's action against a bonding company on a bond given to secure a street paving contract, an agreement, whereby the materialman was to receive a decreased proportion of vouchers from the city, *held* not to work to the prejudice of the bonding company so as to release it from its obligations; the contractors having paid the materialman nothing after the making of agreement.

3. PRINCIPAL AND SURETY—AGREEMENT WHEREBY CITY TOOK OVER PAVING CONTRACT HELD NOT TO RELEASE BONDING COMPANY.—In a materialman's action against a bonding company upon a bond to secure a street paving contract, an agreement between the contractors, the city and the materialman relating to the abandonment of the work

by the contractors and its completion by the city, being contemplated in the application for bond and in the specifications, *held* not to work in derogation of the bonding company's contract rights so as to release it.

4. PRINCIPAL AND SURETY—OVERPAYMENT OF PRINCIPAL IN STREET PAVING CONTRACT HELD NOT TO HARM SURETY.—In a materialman's action against a bonding company on a bond executed to secure a street paving contract taken over by the city, that the contractors had been paid more than they were entitled to *held* not to constitute a defense available to the bonding company; it not having been injured.

5. PRINCIPAL AND SURETY — ASSIGNMENT OF PAYMENTS PREVIOUSLY ASSIGNED TO BONDING COMPANY HELD NOT TO RELEASE SUCH COMPANY.—In a materialman's action against a bonding company on a bond to secure a street paving contract, where it appeared that the contractors had assigned certain monthly payments to the paving company, that the contractors subsequently assigned such payments to a third party *held* not to release the bonding company; the mere act of assignment constituting no actionable wrong to the company in the absence of a showing of collection by the third party.

6. JUDGMENT—MATERIALMAN HELD NOT ESTOPPED FROM SUING BONDSMAN BY PREVIOUS ACTION, WHEREIN BONDSMAN HAD NOT BEEN JOINED.—In a materialman's action against a bonding company on a bond to secure a street paving contract, that the bank financing the contractor had brought suit against the city for payment and had recovered *held* not to estop the materialman from suing for purchase price of material when the bonding company had not been joined in the first action.

7. PRINCIPAL AND SURETY—PAYMENT UNDER STREET PAVING CONTRACT BY CITY TO THIRD PERSON HELD NOT TO DISCHARGE SURETY.—In a materialman's action against a bonding company under bond given to secure a street paving contract, wherein it appeared that in a suit by a third party financing the contractors brought against the city, judgment had been recovered, the action of the city in paying such judgment *held* not to constitute culpable negligence relieving the bonding company, where the payment of such judgment was contemplated by the specifications.

8. ASSIGNMENTS—ASSIGNMENT REDUCED TO JUDGMENT HELD PRIOR TO ASSIGNMENT NOT SO REDUCED.—Where a bonding company under a bond to secure a street paving contract held an assignment of monthly payments from the city and the contractor had subsequently assigned such payments to a third party financing him, which third party had reduced its assignment to judgment, the third party *held* to have a legal ownership in the funds so assigned which was superior to the equitable property rights of the bonding company under its assignment.

Before MAULDIN, J., Greenville, July, 1918.  Reversed.

For the former appeals in this case see 103 S. C., 55, and 108, S. C. 163.

Action by the Mack Manufacturing Company against the Massachusetts Bonding & Insurance Company, the Carolina National Bank, and others.  Judgment for defendants, and plaintiffs and the last named defendant appeal.  Reversed and remanded.  The documents and agreements mentioned in the opinion were as follows:

(1) Specifications.  Responsibility.—16. The contractor shall be responsible for all material and work until they are finally accepted by the city, and shall repair, at his own expense, any damages they sustain before their final acceptance.  The contractor shall be responsible for all damages caused by him of whatever nature, and must settle all claims from such damages without cost to the city; he shall act as defendant in, and bear the expense of, each and every suit of any and every nature which may be brought against him, or the city, by reason of or connected with the work done under his contract.  Should any claims arise, the city can hold back sufficient money to meet said claims, or until the contractor has satisfied the city that all claims against him as the result of his work have been adjusted.  He must also show that there are no claims or liens whatsoever outstanding at the completion of his contract before final payment is made.

Abandonment.—17. In the event the contractor, at any time, abandons the work, or any part of it, or in the event he fails to prosecute the same faithfully, or in the event he violates any of the provisions of the contract, or in the event the progress of the work at any time indicates that he is not progressing at the rate specified and the engineer notifies the city of any unnecessary or unreasonable delay, then the city shall have the right to and may declare his contract

void and enter upon the work, using any tools, material and equipment thereupon found, and carry said work on to completion, or they may enter upon another contract. In either case all expense for completing said contracts shall be charged to the contractor, and if after paying all claims there is a surplus under the contract, such surplus shall be paid to the contractor. In case the money still due the contractor shall not cover the cost of completing the contract, then the city shall hold said contractor and his sureties liable on the bond for said deficit.

Section 21. Payments.—All work will be paid for in cash, upon the estimate of the engineer, which shall be made at the end of each month; this estimate will include the work completed during the month, and the contractor will be paid within the first ten days of the succeeding month 80 per cent. of the work completed as shown by said estimate, the remaining 20 per cent. will be retained until the completion and acceptance of the work. At the completion of the contract the city will have a final estimate made, and will cause to be paid to the contractors, within 30 days after such final estimate is made, the entire sum found to be due under the contract after deducting therefrom all previous payments and such other sums as may be authorized under this contract.

(2) Application for Bond.—"In further consideration of the company becoming surety as above, the applicants hereby covenant and agree to indemnify the company and save it harmless against all loss, cost, damage, charge, and expense that may accrue to it by reason of said suretyship, whether sustained or incurred by reason of any act, default, or neglect of the applicants, or on account of claims made under or in connection with the said suretyship or any extension or continuation or modification or alteration thereof or otherwise, the applicants agreeing to repay to said company all loss, cost, damage, charge, and expense, including

the fees or other compensation and expenses of any and all
attorneys and agents employed by it to investigate or adjust
such claims.

"And for the protection of the said company the appli-
cants hereby assign, transfer, set over, and convey to the
said company all their rights, title, and interest in and to all
of the tools, plant, equipment, material of every nature and
description which they now have or may hereafter have
located upon or near or appertaining to the work contem-
plated under the contract for which the company has or is
about to become surety; meaning and intending hereby to
assign, transfer, set over, and convey to the said company
all the tools, plant, and materials of every nature and
description now being used, or about to be used, or which
may in the future be used by the applicants in connection
with the work contemplated, whether the same are now
located in or about the site thereof, or elsewhere, and
including hereunder all materials purchased for, or to be
purchased for, or chargeable to said contract, or which may
now be in process of construction in connection with said
contract, or in storage at or in transit to said site, or else-
where.   The applicants hereby further assign, transfer, set
over, and convey to the said company all of their rights in
and to subcontracts which have been or may hereafter be
entered into by the applicants, together with all materials
and stock manufactured or unmanufactured embraced
therein, and the applicants hereby further authorize,
empower, and appoint said company their true and lawful
agent or attorney with full power and authority at any and
all times in their name and behalf to enter upon and take
possession of any or all the tools, plant, equipment, mate-
rials, finished or unfinished, mentioned and referred to in
this paragraph, and to use and enjoy the same, and also to
enforce, use and enjoy any or all subcontracts or other
rights mentioned in this paragraph, and to do any other act

or thing which may at any time be deemed necessary by said company to make effective the terms of this paragraph, with full power to said company to appoint a substitute attorney, or attorneys, to act hereunder.

"This assignment shall be in full force and effect until such time as, in the judgment of the company, all of its liability as surety for the applicants shall have been fully terminated and canceled and the company fully reimbursed for any loss or expense whatsoever that may accrue to it by reason of its suretyship.

"The applicants hereby further agree in consideration of the company becoming surety, that said company shall as of the date hereof be subrogated to all of their rights, privileges, and properties as principal, or otherwise, in or under said contract, and the applicants hereby further assign, transfer, set over, and convey to said company, all of the deferred payments and retained percentages, and any and all moneys and properties that may be or hereafter become due and payable to the applicants at the time of any breach or default in the contract, or cessation of work thereunder, or that may thereafter at any time become due and payable to them on account of said contract, or on account of any extra work performed or materials furnished in connection therewith.    Said applicants further agree that all such moneys and the proceeds of all such payments or properties shall be the sole property of said company for its sole use and benefit, —— to be by it credited upon any loan or advances made on account of said contract, or upon any cost or expense or advancement of any nature whatsoever that the company may or might in its judgment make or become liable for.    Said applicants hereby further authorize, empower, and appoint said company their true and lawful agent or attorney with full power and authority at any and all times in their name and behalf to make, execute, and deliver, any assignment, transfer, or conveyance, and to do

any other act or thing which may at any time be deemed necessary by said company to make effective the terms of this paragraph, with full power to said company to appoint a substitute attorney, or attorneys, to act hereunder."

(3) Contract between Bowe & Page and City.—State of South Carolina, County of Greenville.—This agreement made and concluded this 9th day of August, 1910, by and between the city of Greenville, S. C., represented by its paving and sewer commission, the agents of the mayor and board of aldermen, party of the first part, and Bowe & Page, party of the second part, witnesseth:

That the said party of the second part agrees and by these presents do agree with the said party of the first part, for the consideration named in the proposal at * * * own cost and expense to do all the work, furnishing all the material, equipment and labor necessary to do same, and under penalty of the bond attached, called for by this agreement, and at the price named * * * proposal bearing date of July 23, 1910.

And said party * * * of the second part further agree * * * to do the work in strict accordance with the plans and specifications on file, said plans and specifications, in addition to the proposal mentioned, being hereto annexed and made a part of this contract.

And the party * * * of the second part further agree * * * to do any extra work necessary for the proper completion of the work in the manner set out in the specifications.

It is mutually agreed that payments will be made by the party of the first part as set out in the specifications.

(4) Contract between Bowe & Page and Mack Manufacturing Company.—This agreement, made this twenty-ninth day of August, one thousand nine hundred and ten (1910), by and between the Mack Manufacturing Company, of New

Cumberland, West Virginia, party of the first part, and Bowe & Page, of Charleston, South Carolina, party of second part, witnesseth:

That the party of the first part hereby agrees to sell to party of second part, and the party of second part hereby agrees to purchase from the party of first part, approximately one million two hundred and twenty-five thousand (1,225,000) fire clay paving block for use in paving Main street, from College street to Augusta street, excepting the bridge, in the city of Greenville, South Carolina. The said paving block to be delivered in carload lots, f. o. b. cars Greenville, S. C., via P. C. C. & St. L. Ry., and connecting lines.

It is further agreed between the parties hereto that the party of the second part shall pay to the party of the first part for each and every thousand of said paving block delivered as aforesaid the sum of thirty-two and 15-100 ($32.15) dollars; said payments to be made monthly immediately, after the city makes payment to said second party, and in amount for the same number of brick paid for by the city of Greenville to said second party, less the same per cent. retained by the city of Greenville from said second party; the final payment to be made for the balance due immediately after the final payment is made to said second party by the city of Greenville providing, however, that payments to the party of the first part, by the party of the second part, will not be held up longer than a period of one year.

It is further agreed between the parties hereto that the party of the second part shall pay the freight on all paving block delivered as aforesaid, and shall regularly send the receipted freight bills to the party of first part on the first day of each calendar month, for credit as so much cash paid on account of the respective invoices.

The said first party agrees to ship the paving block according to the needs of the contract between the city of Green-

Mack Mfg. Co. *v.* Mass. Bonding & Ins. Co.   215

Rep.]                    October Term, 1919.

ville and said second party and agrees to ship block of such size as will not require more than 42 blocks to lay one square yard, and of such character as will meet the requirements of the specifications of the city of Greenville for aforesaid work, a copy of which is hereto attached, and made a part of this contract.

It is further agreed between the parties hereto that the performance of this contract on the part of the party of the first part shall be excused by the act of God, strikes, labor troubles, car famines, fire, accidents, or any cause beyond the control of party of first part.

It is further agreed between the parties hereto that no variations from this contract shall be recognized by either party unless reduced to writing and made part hereto.

(5) Bond.—State of South Carolina, County of Greenville.—Know all men by these presents, that we, Wm. F. Bowe and T. C Page, contractors and partners doing business under the firm name of Bowe & Page, as principals, and Massachusetts Bonding & Insurance Company, a corporation of the commonwealth of Massachusetts, as surety, are held and firmly bound unto the city of Greenville, South Carolina, in the full and just sum of twenty-eight thousand dollars ($28,000), for the payment of which we bind ourselves, our heirs, executors, successors and assigns, firmly, jointly and severally by these presents.

Sealed with our seals and dated this the 19th day of September, A. D. 1910.

The condition of the above obligation is such, that, whereas, the above named principals have entered into a contract, which includes the proposal and specifications, all of which are hereto annexed and made a part hereof, which are identified by the signatures of the principals herein, whereby the said contractors have assumed certain obligations to the city with respect to the construction of certain

pavements in the city of Greenville, South Carolina, which are fully specified in the said proposal, specifications and contract, reference to which is hereby craved.

Now, therefore, should the contractors well and truly comply with all the agreements of their contract and proposal, signed by them and dated August 9th, 1910, the said proposal and specifications thereto attached and being a part of the same, and shall fully and promptly pay the wages of all laborers, workmen and mechanics employed by them or their subcontractors on said works, and shall fully and promptly pay the claims of all persons who furnish material and supplies used in the construction of said works, and shall deliver same to the city of Greenville free from all claims aforesaid, and free from the claims of adjoining or neighboring proprietors for damages or trespass, and free from all claims for damages of whatsoever nature done by said Bowe & Page, their officers, agents and employees, then this obligation to be null and void; otherwise to remain in full force and effect.

(6) Agreement of May 16, 1911, between Mack Manufacturing Company and Bowe & Page.—State of South Carolina, Greenville County.—Whereas, a contract has heretofore been entered into between Mack Manufacturing Company, a corporation of the State of West Virginia, and W. F. Bowe and T. C. Page, partners under the firm name of Bowe & Page, for the sale of certain paving brick for use in the city of Greenville; and,

Whereas, there have been differences between the parties as to the construction of said contract, especially with reference to the method of payment for said brick, and it is desired that said differences be reconciled;

Therefore, this agreement witnesseth, that Mack Manufacturing Company releases all claim to the voucher now in the hands of the city treasurer of Greenville, and to the voucher in the hands of the treasurer of Greenville Traction

Company, for work done in the month of April, and it also agrees that it will not levy an attachment upon the property or moneys of Bowe & Page so far as said Greenville contract is concerned, and further, that it will upon reasonable notice from Bowe & Page ship to them at Greenville the remainder of the brick called for by said contract, and deliver the same to the carrier within a reasonable time thereafter, as provided for in said contract.

In consideration of the foregoing, Bowe & Page agree to turn over to Mack Manufacturing Company one-half of the total proceeds of each monthly voucher issued hereafter by the city of Greenville for paving work done by them, within five days after each voucher is received, until said brick are paid for. They further agree that they will pay monthly to Mack Manufacturing Company from the proceeds of vouchers received from Greenville Traction Company, for all brick laid between street railway tracks during the preceding month for which the voucher is issued, this amount to be figured on the net price of brick less freight.

It is further specifically understood and agreed that Bowe & Page relinquish and surrender all claims which they have heretofore alleged or set up against Mack Manufacturing Company on account of too rapid or concentrated shipping of brick, and that all alleged rights or claims for damages arising out of the manner of shipment of brick to date are hereby waived.

It is further understood and agreed that inasmuch as Bowe-Page Dray and Construction Company, a corporation of South Carolina, has succeeded to all rights of Bowe & Page and is an interested party to the paving contract for the city of Greenville, and a party to the making of this agreement, for value received hereby endorses the above agreement and guarantees the performance thereof.

It is also specifically understood and agreed that upon receiving the vouchers as above specified Mack Manufactur-

ing Company will make no other demands for payment, but will accept payment from time to time in the manner specified above, provided the work is carried forward with promptness and dispatch.

(7) Agreement of August 17, 1911, between the Contractors, the City and the Mack Company.—State of South Carolina, County of Greenville.—*In re Mack Manufacturing Company, Plaintiff, v. Bowe & Page, Defendants.*

Whereas, an attachment has heretofore issued in the above stated case and a notice to dissolve the same on the 17th instant has been served; and, whereas, it is desired on the part of the plaintiff to have the hearing of the motion continued until some day between the first and middle of the week beginning August 20th, to be agreeable to the Judge;

Therefore, it is agreed by the undersigned counsel that the hearing be so continued and that pending the determination of the motion to dissolve the attachment the following stipulation shall be effective:

1. That the time to answer the complaint in the said case shall begin to run after the hearing of the motion to dissolve.

2. That the custody of the animals, wagons and other portions of the plant of Bowe & Page, now in the hands of J. O. Cauble, shall be transferred to L. K. Kelly under the control of A. G. Rolfe as agent for the sheriff, for their better care and protection.

3. That Bowe & Page shall have the right to serve additional moving papers within two days of the day of the actual hearing of the motion to dissolve the attachment.

4. That the date of the filing of the affidavits shall be extended in accordance with the extending of the hearing of the motion.

5. That the work of paving Main street shall go forward from the date of this agreement without interruption on the part of the plaintiff.

6. That the lien of the attachment on unused brick and material in the city of Greenville, which the city needs to carry the work forward shall be suspended and shall be transferred to money hereafter to become due by the city of Greenville for such brick at the contract price and material to the extent of the quality of the same used by said city for paving and the value thereof. It is the intention of this agreement to permit the city of Greenville to proceed with the work of paving and at the same time to preserve any and all rights of the plaintiff herein under the attachment. In case any brick remain over after the paving is completed, they shall remain subject to the lien of the said attachment, provided, however, that if the attachment shall be dissolved, the lien provided for herein upon the fund shall cease.

7. Bowe & Page consent that the city of Greenville shall have the right to pay the freight and demurrage as per contract with Bowe & Page on the brick referred to in this agreement and charge the same against the account of Bowe & Page.

8. In consideration of the foregoing, Mack Manufacturing Company hereby release the brick and material referred to herein to the use of the city of Greenville for paving and in lieu of said release, accepts the lien on the fund as set forth in paragraph 6 hereof.

(8) Assignment of Bowe & Page to Bank.—State of South Carolina, County of Richland.—Whereas, W. F. Bowe and T. C. Page, partners trading and doing business under the firm name of Bowe & Page, have entered into a contract with the city of Greenville, in the State of South Carolina, to do and perform certain paving in the said city, as set forth in a contract executed by and between the said city of Greenville, and the said Bowe & Page, of date the 9th day of August, 1910, and specifications thereto attached;

And whereas, the said Bowe & Page have borrowed from the Carolina National Bank, the sum of five thousand dollars

($5,000) to be used in the execution of the said contract, as evidenced by the note of the said Bowe & Page, of $5,000 dated September 2, 1910, payable November the tenth after date, to the order of the said Bowe & Page, and by the said Bowe & Page indorsed to the Carolina National Bank;

Now, in order to secure the payment of the said note as the same shall become due and payable, and any and all renewals thereof, or any further amounts which may be borrowed by the said Bowe & Page from the said the Carolina National Bank in the execution of the said contract, which said sum so borrowed shall be expressed in their note or notes to be hereafter executed, we, the said Bowe & Page, do hereby assign, transfer and set over to the said Carolina National Bank of Columbia, all sum or sums of money which shall become due and payable to the said Bowe & Page under the said contract; and we, the said Bowe & Page, do hereby authorize and direct the said city of Greenville to make all vounchers for the payment of work done under the said contract, payable to the order of the Carolina National Bank as the work progresses, and whenever, from time to time, payments shall become due and payable under the said contract.

And the said Bowe & Page agree further that a copy of this assignment shall be filed with W. E. Beattie, chairman of the paving committee, of the city of Greenville, which contract when so filed shall be full authority for the city of Greenville to make payments as hereinabove stated.

(9) Contract between Traction Company and Bowe & Page.—South Carolina, Greenville County.—This agreement, made and concluded this 24th day of October, 1910, by and between the Greenville Traction Company, of Greenville, South Carolina, by the Mill Power Supply Company, the agents of said company, party of the first part, and Bowe & Page, party of the second part.    Witnesseth:

That the said party of the second part agrees and by these presents do agree with the said party of the first part for the consideration named in this proposal at its own cost and expense to do all the work, furnishing all the material, equipment and labor necessary to do the same, and under penalty of the bond attached, called for by this agreement, and at the price named in their proposal, bearing date of October 24, 1910.

And said party of the second part further agrees to do the work in strict accordance with the plans and specifications on file, said plans and specifications, in addition to the proposal mentioned, being hereto annexed and made a part of this contract.

And said party of the second part further agrees to do any extra work necessary for the proper completion of the work in the manner set out in the specifications.

It is mutually agreed that payments will be made by the party of the first part as set out in the specifications.

*Messrs. Haynsworth & Haynsworth* and *Wm. G. Sirrine,* for plaintiff-appellants, cite: *Copy of attachment served on the city without notice showing the property levied on insufficient to create a levy:* Code Proc., secs. 284-290. *Bond cannot be corrected as the rule is that mistakes of law, and in the construction of an instrument, will not be corrected except in cases where one of the parties by his conduct contributed to the mistake on the part of the other:* 40 S. C. 101; 2 Pom. Eq. Jur., sec. 843; 4 Rich. Eq. 307. *Agreement between Mack Mfg. Co. and Bowe & Page created no lien upon funds in the hands of the city, so that withdrawal by Mack Mfg. Co. of notice given the city not to pay operated to relinquish no right and caused no injury:* 234 Fed. 576; 14 Wall. 69; 20 L. Ed. 762; 21 Wall. 441; 22 L. Ed. 623. *No change in performing the contract will release*

*the surety unless he has been injured:* 90 C. C. A. 274; 33 L. R. A. (N. S.) 513; 238 Fed. 705; 191 U. S. 416; 83 S. C. 90; 57 S. C. 466; 103 S. C. 65.

*Messrs. Cothran, Dean & Cothran,* for Massachusetts Bonding & Insurance Co., cite: *Bond was intended to be given solely for the benefit of the city of Greenville, and if it does not express that intention the Bonding Company is entitled to have it reformed accordingly:* 82 S. C. 284; 37 Pac. 712 (Or.); 55 N. Y. 270; 58 N. Y. 355. *The Bonding Company has been discharged by payment by the city of Greenville to Bowe & Page in excess of the amount to which they were entitled at the time under the contract:* 51 S. C. 121; 37 S. C. 145; 111 Fed. 590; 131 Fed. 205; 34 S. E. 895 (Va.); 152 Fed. 956; 56 N. E. 148 (N. Y.); 53 L. R. A. 610; 5 L. R. A. (N. S.) 418; 155 S. W. 977; 233 Fed. 370; 13 L. R. A. 418; 146 Cal. 518; 49 Cal. 131; 204 Pa. 596; 131 Fed. 210; 49 So. 414 (Ala.); 209 Fed. 105; 86 S. C. 502. *Assignment by Bowe & Page to Carolina National Bank with consent of city violated rights of this defendant, and it is discharged from liability:* 164 U. S. 227. *Company was discharged by material alteration of contract between Mack Mfg. Co. and Bowe & Page:* 191 Fed. 570; 67 So. 518 (Ala.); 9 Wall. 13; 164 U. S. 238; 233 Fed. 364; 99 Fed. 239; 89 Fed. 921; 92 Fed. 301; 61 Fed. 78; 92 Fed. 835. *Company is discharged by release of attachment levied upon property of Mack Mfg. Co.:* 92 Fed. 828-834; 104 Fed. 203; 72 Am. D. 208; 8 Ky. Law. 426. *Company is discharged by negligence of the city in illegally diverting funds from materialmen to Carolina National Bank:* 53 L. R. A. 609; 62 Wis. 529. *Judgment in case of Carolina National Bank v. City of Greenville et al. estops the Mack Mfg. Co. as against the Bonding Company to the extent of the amount recovered from the city upon that judgment:* Collier on Bankruptcy 641-2, note 2, page 653; 105 Fed. 595; 186 Fed. 127; 142 U. S. 384; 99

Fed. 414; Collier, page 992; 24 A. & E. Enc. of Law 724, 746. *Company entitled to decree requiring the Carolina National Bank to restore the amount collected by it on its judgment against the city for the benefit of the beneficiaries of the bond:* 103 S. C. 66; 2 Dillon Mun. Corp., 5th Edition, sec. 831; 19 Wash. 589; 97 N. Y. 355; 90 N. E. 851 (Mass.); 53 L. R. A. 609; 59 S. W. 109; 114 Fed. 529; 164 U. S. 227; 4 Cyc. 17; 150 Fed. 465; 121 Fed. 652; 42 S. E. 857 (N. C.); 143 Fed. 810, affirmed in 208 U. S. 404; 211 U. S. 552; 87 S. E. 1023; 91 S. E. 1050 (Ga.); 148 N. W. 55 (Minn.); 211 Fed. 161; 14 L. R. A. (N. S.) 155; 63 S. W. 68 (Ark.); 56 S. W. 532 (Ark.); 97 Md. 598; 99 Am. St. Rep. 466; 107 N. W. 649 (Wis.); 25 N. E. 262 (N. Y.); 60 S. W. 423 (Tex.); Rich. Eq. Ca. 269. *Bonding Company entitled to subrogation upon payment of the amount that may be adjudged against it:* 38 S. E. 374 (Ga.); 49 Minn. 38; L. R. A. 1916c., 1057; 92 Fed. 549; 28 L. R. A. (N. S.) 998; 150 Fed. 471; 71 Fed. 228; 114 Fed. 529; 164 U. S. 227; 182 S. W. 917; 148 N. W. 55 (Minn.); 213 Fed. 908.

*Mr. Robert Moorman,* for the Carolina National Bank, cites: *Bank's assignment was legal instead of equitable:* 97 S. C. 291. *Was for a present consideration without notice and should be protected:* 69 S. E. 113 (Ga.). *City was bound after notice of assignment to apply payments as they accrued to the extinguishment thereof:* 37 Am. Rep. 315. *As between parties having equitable interests, which are in all other respects equal, priority in time gives the better equity:* Pom. Eq. Jur. 414. *Subsequent assignee who collects claim without notice of a prior assignment takes priority:* Corpus Juris 972, note 5. *All materialmen were parties to the action of Carolina National Bank v. City of Greenville and the trustees of Bowe & Page, Bankrupts,*

*and are bound by the decision thereof:* 105 S. C. 147; 8 S. C. (Bailey Eq.) 330; 43 S. C. 224; 54 S. C. 88; 100 S. C. 483.

March 29, 1920.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

Action by the Mack Manufacturing Company on a bond executed by Bowe & Page and the Massachusetts Bonding & Insurance Company to the city of Greenville.

The object of the action is to recover some $12,000 for brick supplied by the Mack Company to Bowe & Page to pave the streets of the city of Greenville.

Pursuing the terminology adopted in 108 S. C. 164, 93 S. E. 713, we shall refer to the Mack Manufacturing Company, the materialman, as the Mack Company; to the Massachusetts Bonding & Insurance Company as the bond company; to the Carolina National Bank as the bank; to the city of Greenville as the city; and we shall refer to Bowe & Page as the contractors; and to the Greenville Traction Company as the traction company.

We held on a former appeal that the complaint states a cause of action in the Mack Company against the bond company, 103 S. C. 55, 87 S. E. 439.

Thereafter, a party hitherto not in the cause, the bank, was brought into it on motion of the bond company, 108 S. C. 164, 93 S. E. 713.

The present appeal is from the opinion of the Circuit Court which tried the cause on the merits; for a trial by jury was waived, the master took the testimony, and the Court tried the cause.

The judgment of the Court went practically to sustain all the contentions of the bond company, and the Mack Company and the bank have appealed.

. But before so much shall be considered it is meet to here dispose of the first of two exceptions made by the bond company.

The first exception of the bond company goes to the point that the city and the bond company never intended, by the paper writing which they signed called the bond and extensively set out in 103 S. C. 55, 87 S. E. 439, to protect the materialmen; and if they expressed any such intention it was a mistaken expression.

There is no testimony of any weight which would warrant us to conclude that the parties did not intend to say that which we have before concluded they did say.

The bond being intact, the bond company seeks to defeat the instant recovery upon it on these grounds, to wit:

. 1. That the contract of August 29, 1910, between the contractors and the Mack Company, which the bond operated to secure, was abrogated by three other written agreements which the contractors entered into, to wit:

(a) One dated October 24, 1910, between the contractors and the traction company touching the pavement of the car trackway.    . .

(b) One dated May 16, 1911, between the contractors and the Mack Company about the method of payment, etc. .

(c) One dated August 17, 1911, between the city, the contractors, and the Mack Company about a transference of attachment lien from brick to money, etc.

2. That the same contract of August 29, 1910, was abrogated by the following several acts of the contractors and the Mack Company, to wit:

(a) By the receipt of $10,000 by the contractors from the city on January 5, 1911, when only $7,263.62 was due to be paid to the contractors.

(b)  By the assignment by the contractors to the bank of their several monthly installments of payment from the city, when the same had been hitherto assigned by the contractors to the bond company.

(c)  By the stoppage in transit by the Mack Company of eleven cars of brick bound for the contractors and the subsequent release of the same to the city.

(d)  By the Mack Company's attachment of brick and other property of the contractors, and then releasing the attachment.

3. That the Mack Company, as creditor of the contractors, is estopped to set up its present claim by the record in the bank against the city to the extent of the recovery by the city in that case.

4. That the Mack Company's present right to set up its claim has been lost by the city's culpable negligence at the completion of the work by it, in paying to the bank the balance it then had on hand, instead of applying the same to the materialmen's claim.

5. The bond company lastly contends that if these defenses shall fail and the bond be yet intact, yet the bank is liable ahead of the bond company to pay the plaintiff's claim.

Before any of these defenses shall be examined, there ought to be stated so general a rule of law as is possible and which will ordinarily operate to discharge such a surety as the bond company.  To that end the bond company has cited for reliance our own case of *Greenville v. Ormand,* 51 S. C. 121, 28 S. E. 147.  The sureties in that case were personal; the sureties in the instant case are "bondmen and insurers" for a compensation.

It is true the bond company's liability is not absolute; those for whom they undertake may do acts which are substantially hurtful to the bond company and in real contravention to the terms of the bond contract, and in such a case the

bond company will be discharged.   But the liability which the bond company assumed was not confined in time and place to the performance of a single act by the contractors, as is commonly the case with strict sureties.   The contract, evidenced by the bond, the application, and the specifications, contemplated many and complicated transactions by many parties in many periods; and the relationship of the bond company thereto was not simply one of passivity. The bond company was constituted a possible actor in the whole transaction from start to finish.   Its attitude was to be at attention.   See 21 R. C. L. 1060; *Greenville v. Guaranty,* 83 S. C. 90, 64 S. E. 518, 964; *Mack v. Mass.,* 103 S. C. 55, 87 S. E. 439; *Atlanta v. Laurinburg,* 163 Fed. 690, 90 C. C. A. 279; *Guaranty v. Pressed Brick,* 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242; *Hill v. American,* 200 U. S. 202, 26 Sup. Ct. 168, 50 L. Ed. 437; *Phil. v. Fidelity,* 231 Pa. 208, 80 Atl. 62, Ann. Cas. 1912b, 1085.

So the real inquiry is: Have the supplementary agreements of the contractors before referred to, and the acts or omissions of the contractors, or of the city or the Mack Company before recited, operated to do a real hurt to the bond company by an attempted material alteration of its bond contract, or by the loss of a right not now available to it?

Reverting, now, to the aforespecified defenses in their order, that one is plainly untenable which refers to the effect of the contract betwen the contractors and the traction company touching the paving of the trackway.

The city and the traction company first agreed that the traction company should bear the cost of paving the trackway; the contractors made a contract with the traction company to do that work; the bond company made a bond along with the contractors to the traction company to save the traction company harmless, and in it made special reference to the contract between the con-

tractois and the traction company; the bond company thereby assented to the contract between the city and the traction company and between the traction company and the contractors, and cannot now say the contrary.

The alleged modification agreement of May 16, 1911, was the sequel of a movement begun by letter on March 4, 1911, by the Mack Company to collect from the contractors and the city deferred installments due for brick. On March 4, 1911, the Mack Company's counsel wrote to the city a letter and called its attention to the obligation of the contractors under their contract with the Mack Company to make monthly payments on engineers' estimates for brick delivered; and further that up to that time no payment had been made and nearly $14,000 was then due for brick.

On March 8th the Mack Company commenced a suit with attachment against the contractors to get payment; and, amongst other things, recited that the contractors had assigned all moneys due and to become due to them to the bank.

The agreement of May 16th, was a composition of this agitation by the Mack Company for payment, and the preamble of it recites that differences had arisen between the parties, "especially with reference to the method of payment for said brick." And the agreement in short substance stipulates that thereafter, excepting the April vouchers issued by the city to Bowe & Page and to the traction company which the Mack Company expressly released, the Mack Company shall receive monthly one-half the total of each monthly voucher issued by the city for paving. There are other stipulations in the agreement; but they are irrelevant to any contract relationship which existed between the bond company and the city and the Mack Company.

The agreement only modified the primary contract between the contractors and the Mack Company of August 29, 1910, by providing for the payment to Mack Company

after the agreement of 50 per cent. of the monthly vouchers to be issued by the city, instead of 80 per cent. thereof as was provided by the primary contracts, and by the contract between the city and the contractors for the performance of which the bond was made.

But as it so turned out that the contractors paid to the Mack Company nothing practically after May 16th, there is no room to hold that the making of the agreement as to future payments operated to injure the bond company; its performance, had it been performed, would at least have lessened the present liability of the surety company.

Coming to the effect of the release of the April vouchers, the Mack Company released only its right to the April vouchers issued by the city to the contractors and the traction company. The bond company insists that such "release" operated to completely discharge its liability under the bond. The Mack Company's answer to that is that it never had any lien on or equitable property in the vouchers; all it had was a contract with contractors to have 80 per cent. thereof paid to it; that, if there was any lien on or equitable property in the vouchers, the bond company and the bank had so much by reason of the separate assignments of the monthly payments made to them by the contractors. And so much is true.

The Mack Company had no right which it might presently have reduced to a payment. The bond company has not been discharged by the agreement unless it shows that it was materially hurtful to the bond company. *Phil. v. Fidelity,* 231 Pa. 208, 80 Atl. 62, Ann. Cas. 1912b, 1085.

But the testimony is that the April vouchers were paid to the bank which had aforetime advanced money to the contractors to "finance the enterprise." And there is no testimony by the bond company tending to show that the money which the contractors got from the bank was diverted

from the enterprise in hand.   The April vouchers, therefore, instead of being diverted from the enterprise in hand, went to its furtherance, and, instead of injuring the bond company, they minimized its liability to that extent.

The next suggested hurtful modification is that of August 17, 1911, which is an agreement betwixt the contractors, the city, and the Mack Company.   At that period the contractors were hastening towards bankruptcy.   They had practically abandoned the enterprise, for two weeks before (August 3, 1911), the city had taken it over under a provision of section 17 of the "Specifications" attached to the "proposal" of the contractors.   Of that fact the bond company well knew, for its attorney, in fact, was present at the transaction and made no dissent. The Mack Company had been pressing for payment, and had on August 5th, resorted to the process of attachment upon grounds not stated in the record.

Pending a motion by the contractors to dissolve the alleged attachment, the agreement of August 17th, was made.   The essence of that agreement looked to a totally new status, yet one which had been contemplated by the "application" and the "specifications," and underwritten by the bond; that was abandonment by the contractors and a completion of the enterprise by the city.   All that was provided in the agreement of August 17th was done, therefore, pursuant to the application, specifications, and contracts, including the bond, theretofore made.

It was, therefore, not in derogation of the bond company's contract rights, but in execution of them.   And so much is a full answer to the defenses marked c and d of subdivision 2, hereinbefore set out.   More than that, the brick upon which it is said the Mack Company relinquished its hold were used by the city to complete the paving, an undertaking which the bond was made to see through.   The

use of these brick reduced by so much the cost of the completion of the task by the city, and, therefore, reduced by so much the ultimate liability of the bond company.

Another act of the contractors pleaded to defeat the bond was the receipt by the contractors on January 5, 1911, of $10,000, when they were entitled to have only $7,263.62.

The Circuit Court found against this contention of the bond company, and rightly so. There is no testimony tending to show that such payment, confessedly made for brick, in any way injured the bond company.

Next, the bond company charges that it was released by the act of the contractors in assigning on September 2, 1910, to the bank all the monthly payments to be made by the city to the contractors, when same monthly payments had been aforetime assigned by the contractors to the bond company on August 27, 1910.

The act of a second assignment by the contractors was no actionable wrong to the bond company; wherether the collection by the bank of such assigned payments constituted a wrong still available to the bond company constitutes the last defense we have before recited, and the consideration of which will be presently had.

The defenses hereinbefore marked 3 and 4 and 5 are so allied in substance that they will be considered together; they arise out of the legal consequences to the Mack Company to the city and to the bank of the recovery by the bank against the city and the payment of that judgment by the city.

To that action the Mack Company was party, in the person of the trustees in bankruptcy, brought into the action on the motion of the Mack Company. And in that action the trustees *inter alia* alleged for answer:

"That if said city should voluntarily surrender said funds and allow the same to be withdrawn from its custody, such

action would constitute a fraud upon the guaranty company which executed as surety the bond given by said Bowe & Page to the city of Greenville, guaranteeing the faithful performance of said contract; inasmuch as said guaranty company is entitled to the benefit of any protection available to said city for the purpose of compelling said Bowe & Page to perform said contract."

The issue of law made by that allegation was not decided, and could not have been, for the bond company was not party to the action, as manifestly it might have been.

The city completed the paving of its streets, at a period not disclosed in the record, and it then had in hand to the credit of the contractors for distribution to those entitled to have it the sum of $15,584.87.

On February 10, 1912, the bank sued the city to recover a balance due it for money borrowed on the assignments to it by the contractors, and had judgment for $13,283.38, which was paid.   97 S. C. 291, 81 S. E. 634.

The instant action was begun August 19, 1913, and the bank was subsequently brought into it.   108 S. C. 163, 93 S. E. 713.

On the issue of estoppel by the record, we shall for clarity of expression call the bank's action the first action, and we shall call the instant action the second action.

Manifestly, the Mack Company is not estopped to set up the claim it has done in the second action by the judgment in the first action.   The bond company now pleading the estoppel of the first action was not a party to that action; that action was, therefore, a transaction between other parties which neither benefited nor injured the bond company.

Greenleaf puts it this way: "It is a general rule that an adjudication takes effect only between the parties to the judgment, and that it gives no rights to or against third parties."   1 Greenleaf on Evidence, sec. 154.

Freeman states the same truth in other words: "No person (the bond company) can bind another (the Mack Company) by any adjudication (the bank judgment) who (the bond company) was not himself exposed to the peril of being bound in like manner had the judgment resulted the other way." Freeman on Judgments, sec. 154.

The bond company was not so exposed, because it was not party to the first action.

But though the Mack Company is party to both actions, yet the bond company was not privy to Mack in the first action; for the Mack Company did not represent the bond company in that action. 1 Greenleaf, sec. 536.

The bond company stigmatized as "culpable negligence" the action of the city in the payment of the bank judgment; and that act it says has discharged the bond company.

But the city did that which the specifications warranted it to do. That instrument provides that "If after paying all claims (in the construction by the city) there is a surplus under the contract, such surplus shall be paid to the contractor."

The bond company knew the terms of the specifications; it knew that the contractors had abandoned the work; it knew that the city had undertaken to complete the work; it knew that its bond contract bound it to see that the contractors should "deliver the same (works) to the city free from all claims aforesaid," to wit, wages of laborers and claims of persons who furnish material used in the construction of the works.

If there was negligence, it lay at the door of the bond company in its failure to see to a right application of the surplus in the hands of the city at the conclusion of the work.

The bond company was set as a watchman to see that the paving was completed according to the terms of the con-

234    Mack Mfg. Co. *v.* Mass. Bonding & Ins. Co.

| Opinion of the Court. | [114 S. C. |

tract; and one of the terms was that, in the event of abandonment of the task by the contractors, the city might take it up.    (Specifications.)

Finally, the bond company insisted that the bank got what was and is of legal right the property of the bond company; and it ought yet to yield it up to the bond company to pay the instant demands on the bond company.    And it rests its case in that behalf on *Guaranty Co. v. Pressed Brick Co.,* 191 U. S. 416, 24 Sup. Ct. 142, 48 L. Ed. 242, and *Hardaway v. National Surety Co.,* 211 U. S. 552, 29 Sup. Ct. 202, 53 L. Ed. 321, and numerous other authorities to the same point.

Had the bond company been party to the bank suit, and had it there set up the right it now asserts which is to pay the materialmen and then set up (by subrogation) their superior right to that of the bank, it may well be that, in the absence of other mitigating circumstances, the bond company would have prevailed.·

But such is not the case before us.    The bond company's right springs out of these words in the "application," to wit:

"That the said (bond) company shall as of date hereof (August 27, 1910), be subrogated to all of their (the contractors') rights and properties * * * under said contract; and the applicants (contractors) hereby assign, transfer, set over and convey to said (bond) company all the deferred payments and retained percentages, and all moneys and properties that may be or hereafter become due and payable to the applicants (contractors) at the time of any breach or default in the contract or cessation of work thereunder, or that may thereafter at any time become due and payable to them on account of said contract."

For convenience and clarity we denominate the substance so assigned as the "fund."

This language gave to the bond company an equitable property in the fund.    3 Pom. Eq., sec. 1280.

The bank's right springs out of a loan by it to the contractors made of September 2, 1910, of $5,000, to be used in the execution of the paving contract; and the execution on the same day by the contractors to the bank of an assignment of the said fund to secure the said loan and any further sums to be borrowed from the bank by the contractors in execution of the paving contract. A copy of this assignment was promptly furnished the city. This paper writing executed after that to the bond company gave to this bank also an equitable property in the fund. Thus the bond company and the bank had at most only assignments of the fund, and that of the bond company was first in time.

But the bank reduced its equitable property to a legal judgment and collected the same in April, 1913, before the bond company ever proceeded in May, 1916, to set up its present claim to be paid the fund in preference to the bank. The present result is that the bank has a legal property and ownership of the fund, and the bond company had only an equitable property in it. Betwixt these two the right of the bank is superior. See 1 Pomeroy's Eq. secs. 413-417.

The case is removed by the facts of it out of the sphere of the cases like *Prairie v. U. S.,* 164 U. S. 227, 17 Sup. Ct. 142, 41 L. Ed. 412, and *Hardaway v. National Surety Co.,* 211 U. S. 552, 29 Sup. Ct. 202, 53 L. Ed. 321.

The judgment below is reversed, and the cause is remanded to that Court to be concluded on the principles we have announced.

NOTE.—Let the following exhibits be reported:

(1) The specifications which accompanied the contractors' proposal, dated July 23, 1910.

(2) The application for the bond, dated August 27, 1910.

(3) The contract between Bowe & Page and the city.

(4) The contract between Bowe & Page and the Mack Manufacturing Company.

(5) The bond of Bowe & Page and the Massachusetts Bonding & Insurance Company to the city.

(6) The agreement between the Mack Company and Bowe & Page, dated May 16, 1911.

(7) The agreement between Bowe & Page, the city, and Mack Company, dated August 17, 1911.

(8) The assignment by Bowe & Page to the bank, dated September 2, 1910.

(9) The contract between the traction company and Bowe & Page, dated October 24, 1910.

Mr. CHIEF JUSTICE GARY and MR. JUSTICE HYDRICK concur.

Mr. JUSTICE FRASER. I dissent. It seems to me that the rights of the bonding company were disregarded in many particulars and the injury manifest.

Mr. JUSTICE WATTS disqualified.