## 13631

STEWART & KERNAGHAN, INC., v. FIDELITY & DEPOSIT CO.
OF MARYLAND *ET AL.*

(169 S. E., 484)

August, 1930.

518

520

522

524

*Messrs. Sloan & Sloan,* for appellant, cite:

*Messrs. Blythe & Bonham,* for respondent,

*Messrs. J. W. Thurmond* and *T. B. Greneker,* for respond-ent,

*Mr. Edwin H. Folk,* for respondent, 

*Messrs. J. D. Griffith, G. W. Speer, Cooper & Maher* and *D. W. Robinson, Jr.,* for other respondents.

May 3, 1933.

The opinion of the Court was delivered by Mr. Justice Carter.

As a statement of this case we adopt the agreed statement of counsel set forth in the transcript of record:

"This was an equitable action brought by Stewart & Kernaghan, Inc., in the Court of Common Pleas for Edgefield County, on behalf of itself and all other interested creditors against J. W. Reel, Satcher Grocery Company, and M. A. Taylor, creditors of L. C. Ashmore & Sons and the Fidelity & Deposit Company of Maryland, the appellant, as surety on the bond of L. C. Ashmore & Sons for the settlement of certain claims arising out of contract of L. C. Ashmore & Sons with the South Carolina Highway Department for the construction of 10.005 miles of roadway in the County of Edgefield, S. C. The action was commenced in August, 1930, by the service of a summons and complaint. The appellant, the Fidelity & Deposit Company of Maryland, and J. W. Reel, Satcher Grocery Company, and M. A. Taylor, duly filed their answers. None of the other interested parties filed answers. After the issues were made up, an order of reference was granted by his Honor, H. F. Rice, Judge of the Second Judicial Circuit, dated 9th of October, 1930, referring the cause to the master for Edgefield County to take testimony and report the law and facts and further requiring that all creditors of L. C. Ashmore & Sons, their sub-contractors, or holding claims otherwise, arising in the construction, be restrained from instituting any action on

their claims and being permitted to file and prove the same in this action. The order further provided that the master for Edgefield County do advertise for and call in all creditors. The master duly advertised for creditors as provided in the order and a large number of creditors, including those whose claims are involved in this appeal, filed and proved their claims before him. The issues in the case involved the liability of the appellant to the creditors, other than those to whom it conceded its liability, interest on their respective claims, attorneys' fees and costs, and certain phases of the case incident thereto. The master made his report on the 3rd of July, 1931, in which he held the appellant liable on a number of claims and not liable on others. An appeal was taken from this report to the Court of Common Pleas by the appellant and several of the interested creditors. The appeal was heard on exceptions before Hon. C. J. Ramage, presiding Judge of the Court of Common Pleas for Edgefield County, who, on the 2nd of September, 1931, filed his decree affirming, modifying, and revising the report of the master in a number of respects, which was duly entered and became the judgment of said Court. Claims aggregating $21,361.62 were allowed against the appellant and claims aggregating $3,195.23 were disallowed. Exclusive of the claims allowed the appellant paid partially out of the funds due on final estimate as below referred to claims on which it conceded its liability aggregating $11,277.40. Included in the claims allowed are claims of six parties who claimed to work on the project as sub-contractors whose claims aggregate $10,931.36, which are not involved in the present appeal. The present appeal is from the decree of his Honor, Judge C. J. Ramage, solely by the Fidelity & Deposit Company of Maryland, as appellant (a) on a claim of the People's National Bank for $4,000.00 with interest from September 17, 1930, and 10 per cent. attorneys' fees for money loaned the contractor; (b) on a claim of Charles & Beatty for $3,010.00, with interest from December 16, 1929, for

money loaned the contractor; (c) on claims contracted by alleged sub-contractor J. A. Starke aggregating $1,734.45; (d) from a portion of the claim of Hamilton Auto Company for auto repairs and supplies in the original amount of $88.57; (e) from the allowance of a portion of attorneys' fees against the appellant if the creditors who had been paid did not remit their pro rata share; and (f) from allowance to the master as his costs a fee of $500.00 in addition to his statutory costs and commissions.

"L. C. Ashmore & Sons, after the filing of bids, were duly awarded by the State Highway Department the contract for the construction of top-soil roadway known as State Route No. 43, embracing 10.005 miles in Edgefield County, S. C. The contract price was $89,962.00 and the contract, which was dated the 10th of October, 1929, provided for the completion of the work within 240 working days and a contract bond in the sum of $44,981.30. The contractors made a written application to the appellant for the execution, as surety on their behalf of the contract bond in which application they designated themselves as a copartnership of Greenville, S. C., consisting of L. C. Ashmore, J. P. Ashmore, and V. L. Ashmore. The proposals and contract were duly executed by L. C. Ashmore & Sons and the contract bond in the sum of $44,981.30 was duly executed by L. C. Ashmore & Sons and the appellant on the 9th day of October, 1929.

"The contract provided that, after the completion of portions of the roadway not less than two miles in length, the same should be maintained by the contractor under public traffic for at least 30 days. The contractor completed all of the work on the project with the exception of some of the maintenance thereon, which was done by the State Highway Department under agreement with the Highway Department, the contractor reimbursing the Highway Department therefor. The proceeds of all of the monthly estimates from the months of November, 1929, to August, 1930, numbered

from 1 to 10, inclusive, aggregating $78,479.49 were paid by the Highway Department to the contractors. The proceeds of the final estimate, amounting to $10,554.65, were paid by the highway to the appellant on or about the 15th of December, 1929, to protect it from any and all liabilities under its bond and under the terms of its assignment agreement executed by the contractors and its general right to subrogation. The proceeds of the final estimate, together with certain additional amounts, aggregating to all $11,-277.40, were paid by the appellant to the master for Edgefield County for disbursement to certain of the creditors on whose claims the appellant conceded liability and was so disbursed by the master."

The pertinent allegations contained in the complaint and answers are stated by counsel for the litigants, as follows:

### "COMPLAINT

"The complaint alleges the execution of the contract, the bond of the appellant and the terms thereof, the indebtedness of the contractor to the plaintiff and to the defendants other than the appellant, the liability of the appellant therefor and to all other creditors of the contractors in a similar plight and for the benefit of those who desire to join therein, the action is brought; that the appellant is liable for attorneys' fees in favor of the attorneys for the plaintiff and prays for a forfeiture of the bond; that all creditors of the contractor be called into and required to prove their claims in the action, together with such other allegations and prayers as are appropriate to a creditors' suit."

### "ANSWER

"The appellant filed its answer admitting and denying various allegations of the complaint and praying for a dismissal thereof. The defendants, J. W. Reel, Satcher Grocery Company and M. A. Taylor, filed their answers setting up the nature and amounts of the claims due them and praying

for judgment against the appellant. No other claimants filed answers or other pleadings, but filed and proved their claims before the master under the order below referred to."

Issues being joined the case was, by order of the Court, referred to the master for Edgefield County for the purpose of taking the testimony and passing upon all issues in the cause, and, as stated above, requiring all creditors of the said L. C. Ashmore & Sons, their sub-contractors, and all others holding claims, arising in the construction of the said roads, to file and prove the same in this action, and restraining them from proceeding otherwise. The order further provided that the said master should advertise for and call in creditors, which the master did, and thereafter held references and took the testimony offered by the parties interested. In due time, after giving consideration to the matters involved and hearing argument of counsel, the master filed his report in the case, together with the testimony taken before him.

To the report of the master, the defendant, Fidelity & Deposit Company, and also the claimants, People's National Bank and Charles & Beatty, filed exceptions. According to statement contained in the transcript of record the exceptions on behalf of the Fidelity & Deposit Company are embraced in the exceptions to the decree of the Circuit Judge on appeal to this Court and need not here be stated. For the purpose of an understanding of the questions involved and the conclusions reached by the Circuit Judge as set forth in his decree, relative to the claims of the People's National Bank and also the claim of Charles & Beatty, we quote herewith their exceptions to the master's report, as summarized in the transcript of record, it being stated that exceptions 1, 2, and 4 of these creditors are identical:

"(1) Error in refusing the motion to reform the application of the contractor to Fidelity & Deposit Company for surety bond, because of error in inserting answers to Questions 37 and 41, by changing 'South Carolina National Bank'

to 'People's National Bank' in Question 37 and in changing 'no' to 'yes' in said application in Question 41, for the reason:

"(a) That the testimony conclusively shows that Fidelity & Deposit Company of Maryland, through its agents and servants, knew that the contractor knew before the contractor's bond was signed that he was unable to carry on the work without borrowing money and assigning estimates due him in order to secure such loans for use in carrying out his contract with the State Highway Department and would assign the estimates to secure such loans; the answers to Questions 37 and 41 were inserted in the application through a mutual mistake, or else such answers were given to those questions as a result of the fraudulent act on the part of the agent in writing the application for the surety bond.

"2. Error in holding that there was neither fraud nor mistake in the answer to Question 41 in the application for bond, when the undisputed testimony shows that the answer was untrue, that the question if asked would have been answered 'yes'; that the question was not in fact either asked or answered and the insertion of the answer 'no' to Question 41 was either due to a mutual mistake of the parties executing said application or the fraudulent act of the agent who took the said application; that the act and knowledge of the agent was imputable to the Fidelity & Deposit Company of Maryland and was binding upon it.

"4. Error in not holding that the assignment of Charles & Beatty had priority over the assignment to the surety company in the application by the contractor and in holding that the assignment to the Surety Company had priority because the contractor had breached his contract, it being submitted:

"(a) That the right of the bank (and Charles & Beatty) to payment under their assignment accrued at the time final estimate was paid to the contractor and at that time the right of the surety company under the assignment to it had not accrued.

"(b) The undisputed testimony shows that the contractor never defaulted nor was declared in default under the terms of his contract with the State Highway Department.

"(c) The failure of the contractor to pay claims against him as and when due did not amount to breach of the contract with the State Highway Department or the surety company as contemplated by the terms of the assignment in the application, and there was no breach by the contractor of his contract until there was a failure on his part to pay such claims after he had received final payment from the State Highway Department, and the act of the surety company in taking possession of the entire payment under the final estimate prevented the contractor from paying the claims against him, particularly those referred to by the master on page 23 of his report.

"(d) There was no default on the part of the contractor nor breach of his contract with the State Highway Department or the surety company as would make operative the assignment of the contractor in his application for bond, and under the terms of said assignment it never became operative in favor of the surety company.

"Exception 3 (People's National Bank). Error in finding as follows: 'I find in conclusion that the surety company in this action, by virtue of the assignment made to it by the contractor in and by and at the time of this application for bond herein holds the prior and superior lien of assignment and on account of the breach of bond and payment of certain debts of contractor, is as a matter of law entitled to be subrogated to the rights of the contractor in the fund delivered to it by the South Carolina State Highway Department, and that its right to claim such fund is superior to any claim of Messrs. Charles & Beatty or People's National Bank of Greenville.' It being submitted that the surety company, through its agents and servants, had knowledge at the time of the execution of the bond that the contractor intended to obtain a line of credit with the People's National Bank from

Three to Five Thousand Dollars, and intended to borrow money to that amount from said People's National Bank and to secure such loan or loans by the assignment of estimates due the contractor by the State Highway Department; and that A. G. Furman, the agent of the surety company, not only had such knowledge but actually personally assisted the contractor in making arrangements with People's National Bank for such credit and loans. Regardless, therefore, of whether the application is reformed, the surety company having such knowledge, is held in law under the principles of the *Gustafson case* to have waived the priority claimed by its prior dated assignment and is estopped to deny the priority of the assignment to the People's National Bank.

"Exception 3 (Charles & Beatty). Error in finding as follows: 'I find in conclusion that the surety company in this action, by virtue of the assignment made to it by the contractor in and by and at the time of his application for bond herein holds the prior and superior lien of assignment and on account of the breach of bond and payment of certain debts of contractor, is as a matter of law entitled to be subrogated to the rights of the contractor in the fund delivered to it by the South Carolina State Highway Department, and that its right to claim such fund is superior to any claim of Messrs. Charles & Beatty or People's National Bank of Greenville.' It being submitted that the surety company, through its agents and servants, had knowledge at the time of the execution of the bond that the contractor intended to borrow money and to secure said loan or loans by the assignment of estimates due the contractor by the State Highway Department. Regardless, therefore, of whether the application is reformed, the surety company having such knowledge is held in law under the principles of the *Gustafson case* to have waived the priority claimed by its prior dated assignment and is estopped to deny the priority of the assignment to the said Charles & Beatty.

"Exception 5 (People's National Bank). Error in not holding the assignment by the contractor to People's Na-

tional Bank had priority over the assignment of Charles & Beatty, it being submitted:

"(a) That the priority of successive assignees takes effect from the time notice is given by the assignees to the debtor and not from the date of the execution of the assignments, and that the undisputed testimony showing that the People's National Bank gave written notice to the State Highway Department and no notice having been given by Charles & Beatty, the assignment to the bank thereby had priority, regardless of the date of its execution.

"(b) In the *Powell case,* 139 S. C., page 427, 138 S. E., 184, 189, cited by the master, the question was 'whether or not notice of the assignment to the bonding company was necessary to affect the rights of the holders of subsequent assignments.' The question in this case does not depend upon whether notice was given to the bonding company, but whether such notice was given by the assignee to the holder of the fund assigned, and it is submitted that the bank which gave notice of its assignment to the State Highway Department, the holder of the fund is entitled to priority over Charles & Beatty, who did not give such notice."

The case, on exceptions to the master's report, was heard by his Honor, Judge C. J. Ramage, who after due consideration, issued his decree in the cause, dated September 2, 1931, whereby his Honor sustained in part and overruled in part the exceptions to the said report. From the decree of Judge Ramage, the defendant Fidelity & Deposit Company has appealed to this Court, no exceptions being filed on the part of any of the other parties to the cause. As stated in the agreed statement of counsel, the appeal by the said surety company is "(a) on a claim of the People's National Bank for $4,000.00 with interest from September 17, 1930, and 10 per cent attorneys' fees, for money loaned the contractor; (b) on a claim of Charles & Beatty for $3,010.00, with interest from December 16, 1929, for money loaned the contractor; (c) on claims contracted by alleged sub-contractor,

J. A. Starke, aggregating $1,734.45; (d) from a portion of the claim of Hamilton Auto Company for auto repairs and supplies in the original amount of $88.57; (e) from the allowance of a portion of attorneys' fees against the appellant if the creditors who had been paid did not remit their pro rata share; and (f) from allowance to the master as his costs a fee of $500.00 in addition to his statutory costs and commissions."

Under the view we take of the case it would serve no useful purpose to discuss at length the questions involved in the appeal, for the reason that the master's report and the decree of the Circuit Judge contain a full discussion of the same. The said claim of the People's National Bank and the claim of Charles & Beatty were held by the master, and, also, by the Circuit Judge, to be valid claims against the appellant surety company, and further, that the said claims constituted a direct liability of the surety company by reason of the terms of the bond in question and the application made by the contractor to the said bonding company. However, the master held that the surety company had priority over the assignment of certain payments under the contract to the said bank, and, also, to Charles & Beatty. His Honor, Judge Ramage, who heard the case on appeal from the master's report, discusses this question at length and reaches the conclusion that the bank had priority over the assignment to the surety company, his Honor basing his finding and holding upon the terms of the bond, the application referred to, and the testimony regarding the same, and upon the law declared in the case of *National Loan & Exchange Bank of Greenwood v. Gustafson et al.,* 157 S. C., 221, 154 S. E., 167. We fully agree with his Honor, Judge Ramage, in holding that under the facts of this case, and the law as declared in the *Gustafson case,* the assignment to the People's National Bank gave the said bank a priority to the assignment to the surety company. Therefore, the claim of the bank is sustained not only on the ground that it is

covered by the bond in question, but, also, upon the ground of priority in the said assignment of estimates. However, we do not think the claim of Charles & Beatty falls within the class of the bank's claim, and we do not think that it was the intention of the Circuit Judge to hold that these claims were in the same class. It is true, in the introductory remarks of the Circuit Judge in the preparation of the decree in the case, his Honor made reference to the claim of Charles & Beatty in connection with the claim of the said bank, but we do not find in the decree a specific finding and holding that Charles & Beatty has a priority to the assignment to that of the surety company, but there is a specific finding and holding by his Honor that the said bank acquired a priority, and all through the decree reference is made to the claim of the bank. In our opinion, Charles & Beatty did not acquire such priority in the assignment of estimates in question. However, the claim of Charles & Beatty for the sum allowed by the master, and confirmed by the Circuit Judge, is a liability of the Fidelity & Deposit Company as surety under the said bond. We agree with the conclusion reached by the Circuit Judge in every other respect, except as to the compensation provided for the master. His Honor provided in his decree that the master should be paid for his services in the case the sum of $500.00, "in addition to regular costs and commissions, and fee to be taxed as costs."

The master, J. H. Cantalou, after performing the services as master in this case, died, and his executrix, Mrs. Mattie Sue Cantalou, has been substituted as a party in his stead. As we understand the position of this respondent, it is conceded that the law fixes the fees and commissions of the master, but it is contended by respondent that the master in the case at bar is not bound by the amount fixed by statute, for the reason that, in conformity with Section 4941, Volume 2, Civil Code 1932, providing that the parties to a suit may agree in writing what amount shall be paid to the master for his services in a case, the parties

in the case at bar made such agreement; that is, that the parties agreed in open Court to allow the Judge, Hon. C. J. Ramage, to fix the amount of costs of the master. In support of the respondent's position that such agreement was made our attention is called to a statement of one of the attorneys in the case, representing some of the respondents, made before the Circuit Judge, when the case was on a hearing before him, as follows: "It is agreed between the attorneys representing the plaintiff and numerous claimants and the attorneys representing the defendant, Fidelity & Deposit Company of Maryland, that Honorable C. J. Ramage fix the fee of compensation for J. H. Cantalou, as master in this case, and for the stenographer, Miss Elizabeth Wright, for her work in this case."

Following this statement, the following occurred in Court:

By Judge Ramage: "Q. Mr. Cantalou, what do you think would be a reasonable fee for your work as master in this case? A. I think $1,000.00 would be a reasonable fee in view of the amount of work done by me in this case."

Mr. Beverley Sloan, as counsel for the defendant Fidelity & Deposit Company of Maryland, makes the following statement: "I have agreed that the amount of the referee (master) and stenographer's costs be fixed by the Judge but it is not to be construed that the amount as fixed is agreed to as I have no authority to commit the defendant, Fidelity & Deposit Company of Maryland, to the latter."

Under our view this, the above quoted occurrence in Court, should not be construed as an agreement of the parties that the Judge should allow the master compensation "in addition to regular costs and commissions, and fee to be taxed as costs" as directed by the Circuit Judge. Construing the statement most favorably for the respondent it could only be said that the appellant's counsel only intended to agree that the costs (and we interpolate costs provided by law) be fixed by the Judge, and counsel did not have in mind extra compensation. Counsel for appellant specifically stated,

at the time, before the Circuit Judge, that he had no au-. thority to bind the appellant on the question of amount. Furthermore, it is our opinion that the costs and commissions to which the master was entitled under the provisions of the Code, in this case, afforded the master sufficient compensation for the services he performed. While the record before us does not disclose the exact amount the master was entitled to in the case under the provisions of the Code, according to statement contained in respondent's brief, it amounted to more than $600.00. The commissions alone amounted to $430.00. It is seldom that the master, in handling cases, receives so large an amount for his services. In this connection let us state, further, that we have taken into consideration the amount of services performed, recognizing the fact that the master devoted considerable time to the case.

For the foregoing reasons it is our opinion that the Circuit Judge erred in providing the extra compensation for the master, and think the decree should be amended by striking out the additional compensation.

While we have not discussed herein all of the questions raised by the appellant and every position urged, we have duly considered the same.

It is the judgment of this Court that the decree of the Circuit Judge and judgment thereon be modified to conform to the views herein expressed, and affirmed in all other respects.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.