**FIRST NATIONAL BANK OF SOUTH CAROLINA, Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.**

**Civ. A. No. 73–205.**

United States District Court,
D. South Carolina,
Columbia Division.

March 14, 1974.

H. Simmons Tate, Jr., George S. King, Jr., of Boyd, Knowlton, Tate & Finlay, Columbia, for plaintiff.

Irvine F. Belser, Jr., of Belser, Belser, Baker & Barwick, Columbia, S. C., for defendant.

ORDER

ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

HEMPHILL, District Judge.

At the pretrial hearing of this matter it was agreed between the parties hereto that, in order to conserve time, the court would consider cross motions for partial

summary judgment on plaintiff's first cause of action. Partial summary judgment is sought as to the coverage of a performance and payment bond executed by defendant and the court is called upon, at this point, to interpret the provisions of the bond.

## STATEMENT OF FACTS

On October 7, 1968, O. C. Vaughn Construction Co., Inc. (hereinafter referred to as Vaughn) entered into a contract with the Housing Authority of Union, South Carolina (hereinafter referred to as the Housing Authority) for the construction of a "Housing for Senior Citizens and Low Rent Housing Project". The contract required Vaughn to furnish a performance and payment bond. Vaughn obtained the bond from defendant.[1]

In October, 1969, Vaughn borrowed a total of $75,000.00 from plaintiff, secured by an assignment of Vaughn's "retainages"[2] due from the Housing Authority. Subsequently, in January, 1970, Vaughn defaulted on the contract with the Housing Authority, and the Housing Authority had to complete the project. Plaintiff has been able to partially satisfy the notes executed by Vaughn but there remains due and unpaid thereon the principal sum of $54,959.39 and accrued interest. Plaintiff has alleged, and declares it is prepared to prove, that all or part of the funds borrowed by Vaughn for use in or about the construction of the Housing Authority project were used by Vaughn in or about the project. Defendant has denied this assertion, and it has been agreed that this factual question will be reserved.

1. A copy of the bond will be found in the appendix attached hereto.

2. It is common with substantial construction projects, which may take years to complete and which require the contractor to furnish all necessary supplies, to have periodic installments of the contract price paid to the contractor before completion of the work. The amount of each installment is usually

## ISSUE

The issue presented is whether the performance and payment bond covers loans made to the contractor for use on the bonded project. More narrowly stated, the issue is whether the bond executed by defendant covers the loans made by plaintiff to Vaughn, assuming that some or all of the borrowed funds were used on the Housing Authority project. Because the jurisdiction of the court is based on diversity of citizenship, resolution of this issue is governed by the law of South Carolina. Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## ANALYSIS

Plaintiff contends that the bond executed by defendant covers loans made to the contractor for use on or in connection with the bonded project. The conditions of the bond are not only that the contractor shall promptly pay "for all work done, or skill tools, or machinery, supplies, labor, and materials furnished" but also that the contractor shall *"promptly pay all . . . debts incurred by the contractor in or about the performance of the work contracted for".* On two previous occasions the courts of South Carolina have been called upon to resolve the question of whether similar language extended the coverage of payment bonds to include bank loans to the contractor. In both cases South Carolina held that the bank was entitled to recover against the bond. Because these cases are similar to the case at bar they will be fully examined herein.

The first of these cases is National Loan & Exch. Bank v. Gustafson, 157 S. C. 221, 154 S.E. 167 (1930). There based on the amount of the work completed and the value of materials stored at the site. Such payments are frequently referred to as progress payments or estimates. It is also a common practice for owners to deduct a certain percentage of the periodic payment and to retain it as security for the completion of the project. Amounts so deducted are frequently referred to as retained percentages or retainages.

plaintiff bank had made loans to the contractor on a school construction project in Greenwood, South Carolina. The loans were secured by an assignment to the bank of the contractor's estimates and retainages and the money borrowed was used to pay for materials and payrolls. The contractor failed to complete the project, and completion was taken over by the bonding company. The bonding company also failed to complete the project, and the school trustees finally took charge and completed the job. During the period when the bonding company was in control of the job, certain estimates which had secured the bank's loan of $12,000.00 to the contractor (which was then past due) were paid to the bonding company. The bank thereafter commenced an action against the contractor and bonding company for the $12,000.00 and also asked that the trustees be enjoined from making further payments of estimates. The trustees were permitted to complete the project and after its completion the trial court took up the claims of the bank against the bonding company. The bank's claim rested upon the grounds that the bonding company had received estimates assigned to the bank, that the bonding company had assumed the obligations of the contractor and that the bank's loan was covered by the bond. The court held that the bonding company was liable to the bank under each of the theories and that any one of the theories alone would support a recovery by the bank.

To determine that the bank could recover under the terms of the bond, the trial court looked to the language of the bond which provided:

> The condition of this Obligation is such that if the Principal shall faithfully perform the Contract on his part, and *satisfy all claims and demands incurred for the same,* . . . and shall pay all persons who have contracts directly with the Principal for labor or materials, then this obligation shall be null and void . . . (Emphasis added.) 157 S.C., at 245, 154 S.E., at 176.

The trial court noted that the liability of the bonding company rested upon the terms of the bond and the intention of the parties and that the words used should be given their ordinary popular meanings. The decision states, in part:

> If these words in the bond [the words emphasized above] are given their ordinary meaning, in accordance with the terms set forth in the plans and specifications, and as generally understood, then the bond in specific terms secures the payment of this claim. These words 'satisfy all claims and demands' if given any meaning at all, must mean something other than the things specifically set out in bond thereafter. The bond in specific terms provided for the payment of labor and materials, and these words must have been intended to be broader than those specific terms. This was a public building; public funds were used in its construction and the Board of Trustees were naturally interested in seeing that all claims incurred by the contractor in connection therewith were paid, and for that purpose the clause in the bond was inserted. . .

157 S.C., at 247, 154 S.E., at 177. On appeal to the South Carolina Supreme Court the trial court's decision was affirmed for the reasons assigned by the trial judge.

Defendant's attorney is apparently in error in stating that the court in *Gustafson* did not allow recovery under the language of the bond. After discussing the bank's priority over the bonding company in the contractor's assignment of the estimates, the court said, "There is still another compelling reason why the Surety Company is liable to the Bank." 154 S.E., at 176. The court then held the surety liable under the language of the bond, portions of which holding this court has quoted above. 154 S.E., at 176–177. Similarly, the *Stewart & Kernaghan* case, infra, allowed recovery under the language of the bond and of the construction contract. See 169 S.E., at 436–441.

The second South Carolina case in point, Stewart & Kernaghan, Inc. v. Fi-

delity & Deposit Co., 169 S.C. 516, 169 S.E. 434 (1933) involved a highway construction contract let by the South Carolina Highway Department. There the contractor completed the work but did not pay all of the creditors. The bonding company therefore demanded and received from the Highway Department the sums remaining due on the contract and apparently paid some but not all of the creditors. The remaining creditors brought suit against the bonding company. Included among the unpaid creditors of the contractor was a bank which had made a loan of $4,000.00 to the contractor secured by the estimates on the job and which was used to pay for labor and materials on the job. As in the *Gustafson* case, the bank's claim rested upon three grounds: (1) the priority of the assignment to it of estimates paid to the bonding company; (2) the assumption of the contractor's obligations by the bonding company; and (3) the coverage of the bond. Again the decision was for the bank on all three points. The bond in question provided that the contractor "shall pay when and as due all lawful claims for labor performed or materials and supplies furnished for use in and about the construction of said highway". The trial court stated that it thought "the work supplies furnished in and about the construction of said highway would cover the claim of People's Bank". 169 S.C., at 522, 169 S.E., at 436. Moreover, the trial court found that the construction contract defined the surety as:

the corporate body which is bound with and for the contractor, who is primarily liable and which engages to be responsible for his *payment of all debts pertaining to* and for his acceptable performance of *the work for which he has contracted.* (Emphasis added.) 169 S.C., at 524, 169 S.E., at 436.

Thus, reading the bond and construction contract together, the trial court held that the claim of the bank was covered by the bond. This ruling was affirmed on appeal by the South Carolina Supreme Court with the words:

[T]he claim of the bank is sustained not only on the ground that it is covered by the bond in question, but, also, upon the ground of priority in the said assignment of estimates. 169 S.C., at 536, 169 S.E., at 441.

The similarities between *Gustafson, Stewart & Kernaghan,* and the case at bar are striking. Each case involved a contract to construct a public work. The public body in charge of the construction required that a payment bond be furnished by the contractor. The bonds contained broad language respecting the payment of debts by the contractor:

*Gustafson*: "satisfy all claims and demands incurred";

*Stewart & Kernaghan*: "payment of all debts pertaining to" (language in the construction contract);

*Case at Bar*: "promptly pay all . . . debts incurred".

In each case the contractor borrowed money from a bank for use on a bonded project. The loans were secured by assignments to the banks of the contractors' estimates (*Stewart & Kernaghan*) or retainages (*the case at bar*) or both (*Gustafson*). In both of the decided cases, the money borrowed was actually used on the bonded project; in the case at bar, plaintiff asserts that it is prepared to prove that more than the principal amount remaining due on its notes was actually used on the bonded project.

It thus appears that the question before this court has twice been decided by the courts of South Carolina. Although there is contrary authority in other jurisdictions, this case is governed by South Carolina law. These are the *Gustafson* and *Stewart & Kernaghan* cases. These cases have not been overruled and there is no South Carolina case reaching an opposite conclusion. Therefore, as a matter of law, the bond executed by defendant covers the loans made by plaintiff to Vaughn to the extent that the proceeds thereof were used in or about the performance of the work contracted for.

Defendant attempts to distinguish the South Carolina cases, *Gustafson* and *Stewart & Kernaghan,* on which the court relies, by asserting that the bonding company in those cases was aware of the proposed loan to the contractor. That fact is true, but was relevant to other portions of those decisions, not to the positions of those decisions for which the court cites them. A careful study of each of these cases shows that the South Carolina Supreme Court's holding that the bond covered the bank loans was based upon the language of the documents themselves and not upon the extraneous facts referred to by defendant's counsel, which were necessary only to those parts of the decisions involving the priority in the retainages.

Standard Oil Co. v. Powell Paving & Contracting Co., 139 S.C. 411, 138 S.E. 184 (1927), is cited by defendant for the proposition that, even in an assignment of retainages situation, banks generally do not prevail where a surety is required to make payment for completion of the project upon a contractor's default, as in the instant case. However, in this cited case, the bank made no claim under the bond, and the case did not involve an interpretation of the language of the bond with respect to bank claims. With respect to the banks, it involved a question of priorities of assignments of the contractor's interest in his contract, a question involved in the second and third causes of action but not this first cause of action.

Even if the question before the court were one of novel impression in South Carolina, the same result would be compelled by logic and the rules of construction set down in the South Carolina cases. Under the law of South Carolina the bond of a surety company, which issues the bond for consideration, is treated like a policy or contract of insurance and is to be constructed by the same rules which apply to the construction of such policies or contracts. Massachusetts Bonding & Ins. Co. v. Law, 149 S.C. 402, 147 S.E. 444 (1929). It is also well settled in South Carolina that the words used in an insurance contract must be taken and understood in their plain, ordinary and popular sense where there is no ambiguity. Blanton v. Nationwide Mut. Ins. Co., 247 S.C. 148, 146 S.E.2d 156 (1966). Further, ambiguous provisions of a policy of insurance are to be construed in favor of the beneficiary. Galloway v. Southern Farm Bureau Ins. Co., 247 S.C. 288, 147 S.E.2d 271 (1966).

The wording of the bond in question is that the principal, Vaughn, shall promptly pay all "debts incurred by the Contractor in or about the performance of the work contracted for". There can be no doubt that when a contractor borrows money from a bank that a debt is incurred. When the money is borrowed and used to pay subcontractors and workers and materialmen on the contracted project it must be said that the debt was incurred in or about the work contracted for. Understood in their plain, ordinary and popular sense, these words in the bond cover the bank's loans to Vaughn.

Viewing the words "debts incurred by the Contractor in or about the performance of the work contracted for" in the context of other conditions of the bond, it is clear that they were intended to refer to debts other than direct obligations to those who have done work or furnished machinery, supplies, labor and materials without having been paid therefor. To say that "debts incurred" refers only, for example, to the debt owed the supplier of bricks for the bricks supplied would be to give the "debts incurred" language no meaning at all beyond redundancy. The only logical manner of interpreting this provision is to say that it applies to all debts incurred by the contractor with the single limitation of having been incurred in or about the performance of the work. There is nothing strained or unnatural about such an interpretation since it takes into account the economic facts of life of such projects. The workmen and suppliers will not always wait to be paid until the contractor has been paid. Thus borrowing is a necessity to the contractor, whether he borrows from

himself or a bank or elsewhere. With a contract of the kind and size before this court, it must be said that, from the very beginning, it is probable that the contractor will, at some point, borrow money for use on the project. Giving the words "debts incurred in or about the performance of the work" their plain meaning recognizes these obvious economic facts.

As with other contracts, the bond should be construed to give effect to the intent of the parties. National Loan & Exch. Bank v. Gustafson, supra. In construing bonds of this sort the South Carolina courts have looked primarily to the intent of the public body which required the bond. Stewart & Kernaghan, Inc. v. Fidelity & Deposit Co., supra; National Loan & Exch. Bank v. Gustafson, supra; Mack Mfg. Co. v. Massachusetts Bonding & Ins. Co., 103 S.C. 55, 87 S.E. 439 (1915). As was said in the *Gustafson* case, paraphrasing the *Mack* case:

> [I]t could hardly be that the Board of Trustees, about to engage in the erection of a public building with full knowledge that those who furnished labor or material or money therefor could not claim a lien on the building, and so solicitous that the work should be faithfully done that a bond was exacted, would be indifferent as to whether claims growing out of the building were paid. 157 S.C., at 245, 154 S.E., at 176.

The logic and justice of this statement is as unassailable today as it was in 1930. The premium charged by the defendant for this bond was $9,233.00. No one would be so naive as not to realize that the amount of the premium was included in the contractor's bid on the project and thus borne, indirectly, by the Housing Authority. By paying this sum, the Housing Authority sought to insure that it would get what it contracted for, a completed project, fully paid for, for the contract amount. The $9,233.00 was paid to defendant for its taking the risk that the contract sum would not be adequate. It was to take on the risks of nonpayment that would otherwise be borne by those who contributed to the public project. Having been compensated to take such a risk, no sort of justice requires that the burden of that risk be diminished because, fortuitously, the bank made loans which were used to discharge obligations the bonding company would have been required to pay beyond any doubt. Thus it does no violence to justice to construe the provisions of the bond so as to cover the claim of the bank.

■ Defendant has asserted that, whatever the effect of the language of the bond previously discussed, the question is answered by a subsequent paragraph of the bond which states:

> This Bond shall be for the use of the Local Authority, and all persons doing work or furnishing skill, tools, machinery or materials under or for the purpose of contract (sic) hereinabove referred to.

Its position appears to be that the bank is not an entity described by this listing and it is therefore excluded from the protection of the bond. The obvious purpose of this provision is to provide for a direct right of action against the bonding company by beneficiaries other than the Housing Authority.[3] While the words used are less expansive than the previous provisions, it is important to note that the language is *not* "This Bond shall be *exclusively* for the use . . . ."; nor are there other words of limitation in the provision. To construe this provision as limiting the beneficiaries of the bond would have the effect of making the words "debts incurred by the Contractor in or about the performance of the work," as well as other parts of the previous provisions, meaningless.

An interpretation which entirely neutralizes one provision of the policy

---

3. In the past sureties have raised a defense on such bonds that they were intended only for the benefit of the owner. See, *e.g.*, Mack Mfg. Co. v. Massachusetts Bonding & Ins. Co., 103 S.C. 72, 87 S.E. 439 (1915).

should not be adopted if the contract is susceptible of one which gives effect to all of its provisions and is consistent with the general intent. Seeming contradictions or conflicts should be harmonized if reasonably possible. Heyward v. American Cas. Co., 129 F.Supp. 4 (E.D.S.C.1955).

Harmony is achieved by interpreting this provision as an effort to assure the previously described beneficiaries of a direct right of action and viewing the words used as a shorthand reference to the prior provisions. Such an interpretation is commanded by the absence of any indication that a limitation was intended and the absence of any apparent reason why the Housing Authority might want to so limit the bond. Further, the court is bound under South Carolina law to reject an interpretation of ambiguous or conflicting provisions which will defeat recovery if the bond is reasonably susceptible of a meaning that will permit recovery. Hann v. Carolina Cas. Ins. Co., 252 S.C. 518, 167 S.E.2d 420 (1969).[4]

Even if the third party beneficiary provision were to be treated as a limitation, it does not necessarily resolve the matter against the bank. It is quite apparent that the list of beneficiaries in that provision was intended to be read broadly. As was pointed out by the trial court in the *Stewart & Kernaghan* case, there is no reason why money borrowed cannot be included within the realm of materials for the purpose of the contract. Money is as much a necessary ingredient of the construction of buildings as is the electricity that runs the saws of the workmen. It seems obvious that this bond would cover an electricity bill. Thus, there is no reason why it should not also cover the loan which was used to pay the workmen and others who furnished goods and such for the project.

## CONCLUSION

Because the bond is broad enough to cover loans made to the contractor, plaintiff is entitled to show that its loans were made for use on and actually used for the Housing Authority project. Thus, to the extent that it is shown that the proceeds of the loans were used by Vaughn to pay obligations arising out of the performance of its contract with the Housing Authority, the loans of the bank to Vaughn will be valid claims against the defendant on its bond. Plaintiff should therefore be entitled to recover from defendant $54,959.39 (or whatever lesser amount it may be able to show was used to pay obligations arising out of the performance of the work contracted for) as principal, plus interest thereon in accordance with the terms of the notes and ten percent of the principal and accrued interest as attorney's fees as provided in the notes. Interest as provided in the notes is a constituent part of the contractor's debt and is thus within the coverage of the bond. The notes also allow the recovery by the bank of attorney's fees for the sum of ten percent of the amount due. In addition, the bond provides for the assessment of reasonable attorney's fees against the bonding company. The court finds ten percent of the sum of the principal amount proved and the interest accrued thereon to be reasonable attorney's fees. The court notes that interest and attorney's fees in accordance with the note were allowed in the *Gustafson* case.

Wherefore, partial summary judgment for plaintiff on its first cause of action is GRANTED. A hearing will be set for the taking of testimony to resolve the remaining questions regarding the circumstances of the loans and the use thereof.

And it is so ordered.

See Appendix on next page.

4. "Nevertheless, this court in a long line of cases dealing with ambiguities in insurance policies, which were in fact patent ambiguities, has held, either expressly or in effect, that the construction of the particular policy was a matter for determination by the court and no jury issue was involved. It is at least difficult to conceive how the well established rule of liberal construction in favor of an insured could otherwise be fully applied and enforced." 167 S.E.2d, at 423.

242

<u>FORM OF PERFORMANCE AND PAYMENT BOND</u>
Page 1

KNOW ALL MEN BY THESE PRESENTS, That we <u>O. C. Vaughn Construction</u>

<u>Company, Inc.</u>, as PRINCIPAL and <u>United States Fidelity &</u>

<u>Guaranty Company</u> as SURETY, are held and firmly bound unto the
Housing Authority of Union, South Carolina, a body corporate and politic
organized and existing under and by virtue of the laws of the State of South
Carolina hereinafter called the Local Authority, in the penal sum of <u>One Million</u>,
Six Hundred Sixty-Six and No/100.
<u>Three Hundred Sixty-Six Thousand,</u> Dollars ($1,366,666.00) for payment of
which sum well and truly to be made, we bind ourselves, our heirs, executors,
administrators and successors, jointly and severally, firmly by these presents.

THE CONDITIONS OF THIS OBLIGATION ARE SUCH, that whereas the Principal
has entered into a certain contract, hereto attached, with the Local Authority
dated the <u>7th</u> day of <u>October</u>, 19 <u>68</u>, for the furnishing
of all labor and materials and the performance and completion in a workmanlike
manner of all work required for the construction of Housing for Senior Citizens
and Low Rent Housing Project SC-19-3, Union, South Carolina, consisting of
43 buildings (containing 120 dwelling units), 1 Maintenance Building, and an
addition to the Administrative and Community Building on existing Project
SC-19-1, in strict accordance with the "Specifications for the Construction of
Housing for Senior Citizens and Low Rent Housing Project SC-19-3, Union,
South Carolina", for the Housing Authority of Union, South Carolina, and addenda
thereto numbered <u>1</u> and
dated <u>September 18, 1968</u> and , and
the drawings referred to therein, all as prepared by James M. Hunt, A.I.A.,
Architect, 16 Chestnut Street, Elberton, Georgia.

NOW THEREFORE, the conditions of the obligation are such that if the Prin-
cipal shall in all respects fully comply with the terms and conditions of said
contract and his obligations thereunder, including the Specifications and Pro-
prosals therein referred to and made a part thereof, and such alterations as may
be made on such Specifications as therein provided for and shall indemnify and
save harmless the Housing Authority of Union, South Carolina, against or from
all costs, expenses, damages, injury or loss to which the Housing Authority
of Union, South Carolina, may be subjected, by reason of any wrong doing,
misconduct, want of care of skill, negligence, or default, including patent in-
fringement on the part of the Contractor, his agents or employees, in the
execution or performance of said Contract, and shall promptly pay all just
claims for damages to property and for all work done, or skill tools, or
machinery, supplies, labor, and materials furnished and debts incurred by the
Contractor in or about the performance of the work contracted for, this obli-
gation is to be void.

And the Surety, for value received, hereby stipulates and agrees that no change,
extension of time, or alteration or addition to the terms of the contract or the
work to be performed thereunder or the Specifications accompanying the same
shall in any wise affect its obligation on this Bond, and it does hereby waive
notice of such change, extension of time alteration or addition to the terms of
the contract or to the work to the Specifications.

APPENDIX
Page 2

FORM OF PERFORMANCE AND PAYMENT BOND

Page 2

This Bond shall be for the use of the Local Authority, and all persons doing work or furnishing skill, tools, machinery or materials under or for the purpose of contract hereinabove referred to.

The undersigned Principal and Surety do further hereby consent and yield to the jurisdiction of the State Civil Courts of Union County, S. C., and shall assure all undertakings under said agreement or contract, and shall assure and protect all laborers and furnishers of materials on said work, both as required by applicable law.

The undersigned Principal and Surety further agrees that in each and every suit brought against the Obligor upon this Bond by the Obligee in which the Obligee shall be successful, there shall be assessed against the Obligor in favor of the Obligee, reasonable attorney's fees, which the Obligor hereby expressly agrees to pay as part of the cost and expense of such suit.

IN WITNESS WHEREOF, the above bounden parties have executed this instrument under their several seals this ___7 th___ day of ___October___, 19 68, the name and corporate seal of each corporate party being hereto affixed and these presents duly signed by its undersigned representative, pursuant to authority of its governing body.

WITNESS:

S/ LaFern Y. Cantrell
Witness as to Contractor

O. C. VAUGHN CONSTRUCTION CO., INC.
(Principal) Contractor

S/ O. C. Vaughn
Owner, President, or V. President

WITNESS:

S/ Janice B. Smith
Witness as to Surety

UNITED STATES FIDELITY & GUARANTY COMPANY
Surety Company

Countersigned:

By S/ Ralph G. Mitchell
Ralph G. Mitchell, Attorney-in-Fact

Licensed Resident Agent

$100, 000. @ $10. 00 per M.
$1, 266, 666. @ 6. 50 per M.
The rate of premium on this bond is $_____per thousand.

The total amount of premium charged is $___9, 233. 00___.

CERTIFICATE AS TO CORPORATE PRINCIPAL

I, ___LaFern Y Cantrell___, certify that I am the Assistant Secretary of the Corporation named as principal in the within bond; that ___O. C. Vaughn___ who signed the said bond on behalf of the principal was then President of said Corporation; and that I know his signature, and his signature is genuine; and that said bond was duly signed, sealed, and attested for and in behalf of said Corporation by authority of its governing body.

S/ LaFern Y. Cantrell
Corporate Seal